## SUSAN A. BRENEMAN v. CHARLES A. MAYER ET AL.

### Decided June 6, 1900.

1. **Practice in Trial Court—Submission of Case on Special Issues—Request for.**

Where the trial judge and the attorneys for plaintiff and defendant discussed the question of submitting the case to the jury on special issues, and only the attorney for defendant objected, and the attorney for the plaintiff thereafter presented to the court in writing certain special issues upon which, with an added issue by the court, the case was submitted to the jury, there was such a request therefor by one of the parties as, under the statute, authorized a submission of the case on special issues. Acts 1899, p. 190.

2. **Same—Uncontradicted Facts Not Submitted.**

Where a case is submitted to the jury on special issues, it is not error for the court to fail to submit matters shown to be facts by uncontradicted testimony:

3. **Same—Request Necessary.**

In a cause so tried, a failure of the court to submit other issues can not be taken advantage of on appeal, where appellant did not request their submission by the trial court.

4. **Vendor's Lien Note—Innocent Purchaser—Purported Sale of Homestead—Estoppel.**

Where a husband and wife execute a pretended deed of their homestead in order to raise money on notes given to the husband therefor and secured by vendor's lien reserved in such deed, and they have such deed placed on record, and negotiate the notes for value and before maturity to one having no notice that the deed is not a bona fide conveyance, neither the grantor nor the grantee can set up against such purchaser of the notes that the deed conveyed no title and

created no lien because it was never intended that it should pass title and was never delivered to the grantee.

**5.  Same—Assignment of Vendor's Lien Notes and Superior Title Not a Mortgage.**

Where the owners of a homestead have conveyed it by deed expressly reserving a vendor's lien to secure notes given for the purchase money, and afterwards make a written assignment of the notes, guaranteeing their payment and covenanting that there are no prior liens, and that they have the superior title to the premises, and that such assignee acquires full right and title to the same,—such assignment is not a mortgage of the homestead.

**6.  Acknowledgment by Wife—Certificate—Exhibiting the Deed.**

While article 4618 of the Revised Statutes directs that the officer taking the separate acknowledgment of a married woman shall show the deed to her, yet a failure of the certificate of acknowledgment to show that this was done does not render her deed invalid, since the form of the certificate as prescribed by the statute does not require such fact to be recited therein. Rev. Stats., art. 4621.

APPEAL from Bexar.  Tried below before Hon. J. L. CAMP.

*C. Upson*, for appellant.

*William Aubrey, J. L. Peeler*, and *Wurzbach & Wurzbach*, for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Charles Mayer, against Henry E. Burks and C. K. Breneman and his wife, Susan A. Breneman, upon a promissory note for $2500, more fully described in our conclusions of fact, and to foreclose an alleged vendor's lien upon a certain lot which is also described in our conclusions.  C. W. Freeman, the other appellee, as executor of the estate of T. W. Freeman, deceased, intervened in the·suit and asked judgment against the defendants upon a note for $1000, which is described in our conclusions of fact, which he claims was made at the same time the note sued on by Mayer was executed, and that a vendor's lien to secure its payment exists ˉupon the same property upon which the lien is claimed by Mayer to secure the amount due on the note sued upon by him, which lien he asked to be foreclosed.

Burkes by a sworn answer denied that he ever had any right, title,. or interest whatever in the property upon which the liens are asserted by appellees; that he never purchased, intended, or attempted to purchase the property or any part thereof described in the note sued on; that he never received, accepted, had possession or control of, any deed therefor, and that he had no knowledge or information that a deed to the property had been executed until this suit was instituted.

The defendant, Susan A. Breneman, answered by general demurrer, general denial, and by special sworn answer, in which she averred that the property described in the notes set up by plaintiff and intervener, and described in the alleged deed of March 4, 1897, was purchased by her and her husband in 1883 for a homestead; that at the time they purchased the lot it was vacant; that they at once built a dwelling house and other necessary buildings thereon, and upon completion thereof in 1884, she, with her husband and their children, moved upon said lot

and into said buildings and began to use, occupy, and enjoy the same as and for their homestead, and that from that time forth, continuously to the present time, she and her husband, with their children, have been in open, visible, notorious, distinct, exclusive, and unequivocal possession of the said lot and improvements thereon, occupying and enjoying the same as their homestead and for no other purpose, and that she had never at any time waived or abandoned her homestead rights in and to the said property.

That on the 4th day of March, 1897, whilst the said premises were her homestead, her husband, by imposition, concealment, undue influ-ence, abuse of confidence, circumvention, and misrepresentation, induced her to sign what she has since been informed was an absolute deed to said lot and improvements to Henry E. Burks, for a pretended consider-ation of $17,500, of which sum $12,500 was alleged in said pretended deed to be paid in cash, and $5000 was alleged therein to be paid in one and two years, the pretended deferred payments being evidenced by three negotiable promissory notes made payable to the order of her hus-band, the said defendant, C. K. Breneman, alone, of which said notes one for $2500 is alleged to belong to the plaintiff; one for $1000 is al-leged to belong to the intervener, and one for $1500 is alleged to belong to her husband; that in said pretended deed a vendor's lien upon the property therein described, her homestead, is expressly reserved to se-cure the payment of the alleged unpaid purchase money.

She denied that either of the said notes constituted or evidenced any part of the purchase money for said property; or that either of them was a lien in any manner upon said property, for the reason that at the time she signed the pretended deed her husband requested her to sign with him what he told her was and what she, relying upon his state-ments, as she had a right to do, believed to be, but what her husband well knew was not, a promissory note, which he told her he wanted to use to pay some debts. She averred that relying upon the said false rep-resentations of her husband and believing them to be true, she did not read the instrument which her husband falsely represented to her was a promissory note; nor did she know its contents, but relied upon the false and deceitful representations of her husband in reference thereto, and she, at the same time and immediately after her husband had signed the same and at her husband's request, signed the said pretended deed, believing it to be a promissory note; that her husband further told her it would be necessary to have her signature to the said note witnessed, which further statement of her said husband she, being uninformed and ignorant in such matters, believed; that her husband told her he would bring a Mr. Charles C. Smith, whose office was near by, to witness her signature; that her husband then left her house, and in about twenty minutes returned to the house with the said Mr. Smith, and that in the presence of both the said Smith and her husband, at her husband's re-quest, she signed what she believed to be a promissory note, which her husband had falsely told her it was; and that the said Burks, the grantee in the said pretended deed, knew of the imposition, concealment, and de-

ceit practiced upon her by her husband as aforesaid in order to procure her signature to the said pretended deed; and that the said Burks participated in the imposition practiced upon her as aforesaid, by remaining silent and not apprising her thereof.

That she believed the said Smith was present at the time it is claimed she signed the pretended deed, on the 4th day of March, 1897, for the sole purpose of witnessing her signature to a promissory note, because her husband had told her he would bring him to her house for that purpose; that the said Smith did not read the said pretended deed to her, nor did anyone else, and she had no knowledge of the contents of the same at the time it is claimed she signed it; that she did not know that the said Smith was present for the purpose of taking her acknowledgment to the said pretended deed; that he did not tell her that she was about to sign a deed; that he did not explain the said pretended deed to her; that the said deed was not shown to her and explained by the said Smith upon an examination privily and apart from her husband or otherwise; and she further averred that by reason of his failure to perform his duty as a notary public in the premises, the said Smith intentionally aided and enabled her husband to practice the imposition upon her as alleged; and that by reason of the said combination between her husband and the said notary public she was tricked into signing the said conveyance; that she did not intend to sign the said pretended deed; that she did not consent to the said pretended sale nor join her husband in executing the said pretended deed; that she did not willingly sign the same; that she did not acknowledge before the said officer that the same was her act and deed for the purposes and consideration therein expressed; and that she had willingly signed the same, nor that she did not wish to retract it; that she did not appear before the said notary public for the purpose of acknowledging the said pretended deed, or for any other purpose; that she had not in any way invoked the exercise of the said notary's authority in that or any respect; that she did not acknowledge the said deed before the said notary public; and that his certificate to the said pretended deed in so far as it purports to affect her is wholly false and not binding upon her.

That the said pretended deed was made in fraud of her homestead rights; that it was made without her consent given in the manner required by law, and is void; that the said pretended grantee Burks was wholly without means; that she was thoroughly familiar with his financial condition; and that if the said pretended deed had been either read or explained to her by the said notary public she would at once have been apprised of its falsity, and would not have signed it; that she did not deliver nor intend to deliver, nor did she authorize any one to deliver the said pretended deed to the said Burks, nor to any one for the said Burks or otherwise; that the said deed was never delivered to the said Burks; that it was never in his possession or under his control; nor was it ever placed within his custody by her or her husband; and that the possession of the said property was not delivered to the said Burks by her or her husband; and that he never had control or possession of the same.

That the said Burks was not a bona fide purchaser of said property for value; that no money or other goods, valuable, or adequate consideration passed or was intended to pass from or was paid by said Burks to her or her husband for the said pretended deed; that she was not benefitted in any way, nor was it intended, nor was it possible she should be benefitted thereby; that the said Burks never accepted the said pretended deed; that he never saw it; that it was never delivered to him; that it was never in his possession or under his control; that he did not file nor authorize anyone to file for him the said pretended deed for record with the county clerk of Bexar County, Texas, and that the said pretended deed was not placed on record with her knowledge or consent, nor with the knowledge and consent of the said Burks; that the said Burks did not pay the fee for recording the same; that the title to the said property did not pass to the said Burks, nor was the title to the same intended to pass to him by either this defendant or her husband; and she further averred that the first knowledge she had that the said pretended deed was signed by her was when the citation was served on her in this case.

That the fact that the property described in said deed and notes was her homestead was well known to the said Burks and Bloom, Cohn & Co., merchants, in Cincinnati, Ohio, to whom her husband had transferred the $2500 note, and who had transferred it to plaintiff; that Bloom, Cohn & Co. knew Burks was a man without means; that plaintiff, Bloom, Cohn & Co., and Burks, all knew of her homestead rights and equities in said property; that Bloom, Cohn & Co. knew that the pretended deed was obtained from her by concealment, misrepresentation, and deception, and as a result of a combination entered into and participated in by them, her husband, Burks, and the notary public for the purpose of subjecting her homestead, without her consent, to the payment of a money demand, a pre-existing debt, which the said Bloom, Cohn & Co. held against her husband; a debt for which she was in no way responsible, which was not incurred by her, nor for her benefit.

She further alleged that neither the plaintiff, nor Bloom, Cohn & Co., nor the intervener, were innocent purchasers or holders of the notes upon which they sued, for a valuable consideration, without notice; that plaintiff, Bloom, Cohn & Co., and the intervener, all had actual and constructive notice of the several matters alleged in her answer; and that each of them before and at the time they acquired the notes sued on had full notice of her rights and equities in and to the property described therein upon which they seek to foreclose a lien, and knew that the same was her homestead.

She also alleged that Abraham Bloom, the senior member of the firm of Bloom, Cohn & Co., acting for said firm, made a pretended transfer of the $2500 note to plaintiff, Charles Mayer, his brother-in-law; that the said alleged transfer was fictitious; that it was not made in good faith, nor for a valuable consideration, but was made for the sole and fraudulent purpose of enabling the said Charles Mayer to bring this suit for the benefit of said Bloom, Cohn & Co., who, she averred, are the

real owners of said note and the real plaintiffs in the suit; and for the further fraudulent purpose of placing colorable title to the said note in said Mayer to enable him to prosecute this suit as an apparently innocent purchaser and holder thereof, in order to prevent her asserting and establishing her rights in and to her homestead; and finally she averred that the said deed purporting to be executed by her was not executed by her; was not executed by her authority, and that it was without consideration and void. She prayed that the deed of March 4, 1897, be declared to be void; for a decree that neither of the notes sued on are a lien upon the property described therein, her homestead, for costs, and for general relief.

No answer was filed by C. K. Breneman.

The case was tried upon special issues submitted to the jury, and upon the finding of the jury upon the issues submitted, judgment was entered in favor of plaintiff and intervener against Henry E. Burks and C. K. Breneman for the amounts due on the notes by them respectively sued upon, together with a foreclosure as against all the parties defendant of the alleged vendor's lien. From this judgment Mrs. Susan A. Breneman alone has appealed.

*Conclusions of Fact.*—On March 4, 1897, Henry E. Burks executed his negotiable promissory note of that date to C. K. Breneman for the sum of $2500 with interest at the rate of 8 per cent per annum from date thereof until paid. The note was made payable March 4, 1898.

On March 4, 1897, Henry E. Burks executed his negotiable promissory note to C. K. Breneman for $1000, payable on or before March 4, 1899, with interest at the rate of 8 per cent per annum from date thereof until paid.

Each note contains the following recitals: "This note is given in part payment of the purchase money for lot 15 in block 15 with all the improvements thereon, situated at the southeast corner of St. Mary's and Pecan streets, San Antonio, Bexar County, Texas, the said lot having a front of 20 varas on Pecan Street, and running back between parallel lines 60 varas to an alley, and being the same property this day deeded to me by Cassius K. Breneman and Susan A. Breneman, his wife, for the payment hereof, together with the interest hereon according to the tenor and reading hereof, a vendor's lien is hereby acknowledged. And in case default is made in the payment hereof and judicial proceedings are used in collecting the same, I agree to pay ten per cent on the amount as attorney's fees. If any of the deferred payments or interest thereon is not paid promptly when due, then in that event all notes shall become due and payable at the option of the owner thereof. Interest payable annually."

On March 4, 1897, the date of the execution of said notes, C. K. Breneman and his wife, Susan A. Breneman, executed an instrument in the form of a general warranty deed, which purports to convey to Henry E. Burks all that certain lot of ground situated in the county of Bexar and State of Texas, and lying on the east side of the San

Antonio River in that part of the city of San Antonio known as Alamo City, it being lot No. 15 in block No. 15, according to the plat of said Alamo City recorded in the office of the city surveyor of said city, and more particularly described in the deed from T. E. Huck to Robert H. Grimes, dated January 4, 1858, the said lot being situated on the southwest corner of St. Mary's Street and Pecan Street, having a frontage of 20 varas on Pecan Street, and running back between parallel lines 60 varas to an alley, and being the same premises conveyed to C. K. Breneman by Jacob C. Higgins, by deed dated January 23, 1883, and duly recorded in volume 21, page 427 of the records of deeds in Bexar County, Texas. The consideration recited in the instrument is as follows: "Twelve thousand five hundred dollars to us in hand paid by Henry E. Burks, and the further following sums of money to be paid by the said Henry E. Burks as follows, to wit: Twenty-five hundred dollars on or before the 4th day of March, 1898; fifteen hundred dollars on or before the 4th day of March, 1899, and one thousand dollars on or before the 4th day of March, 1899, with interest upon all the said sums from this date until paid at the rate of eight per cent per annum, for each of which three said sums the said Burks has executed his promissory note of even date herewith, and to secure the pay-off of all of which said notes with interest payable annually until paid, and ten per cent attorney's fees in case of judicial proceedings thereon, according to the tenor and effect thereof, a vendor's lien is expressly reserved herein and in each of said notes."

After the signature of the grantors the following certificate appears on the instrument:

"State of Texas, County of Bexar: Before me, Chas. C. Smith, a notary public in and for said county and State, on this day personally appeared Cassius K. Breneman and Susan A. Breneman, wife of the said Cassius K. Breneman, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

"And the said Susan A. Breneman, wife of the said Cassius K. Breneman, having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said Susan A. Breneman, acknowledged such instrument to be her act and deed, and declaring that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

"Given under my hand and seal of office, this 4th day of March, A. D. 1897.

(Signed)     "CHAS C. SMITH,<br>
[Seal]          "Notary Public, Bexar Co., Texas."

The instrument was filed for record in the office of the county clerk of

Bexar County, Texas, on March 5, 1897, and duly registered in the record of deeds of said office on the same day.

After the instrument was signed by the grantors, and acknowledged by C. K. Breneman, Susan A. Breneman, the appellant, personally appeared before Chas. C. Smith, a notary public in and for Bexar County, Texas, whose name appears to the certificate of acknowledgment, for the purpose of acknowledging her signature to said instrument, which purports to convey the homestead of herself and husband to H. E. Burks. Whereupon said notary public showed the instrument to her and fully explained to her its contents, separate and apart from her husband, and she then and there, separate and apart from her husband, acknowledged and declared before said notary public that she executed said instrument freely and willingly, and that the same was her act and deed, and that she executed the same for the purpose and consideration therein expressed, and that she did not wish to retract it. The evidence fully warrants the conclusion that when she signed the instrument and at the time she made the acknowledgment before said notary public, she knew it was a deed and not a promissory note, and was fully acquainted with the contents thereof.

After the notary public had attached to the instrument the certificate of acknowledgment and affixed his official seal thereto, he returned the instrument to appellant's husband, C. K. Breneman, who then in person carried it to the office of the county clerk of Bexar County, and delivered it to him to be filed for record and recorded in the records of deeds in the office of said clerk. After it was registered by the clerk, he returned it to C. K. Breneman, who carried it to his house and deposited it in his safe, where it remained until the trial of this cause. The instrument was in fact never delivered to H. E. Burks, and if his evidence and that of C. K. Breneman is to be believed, which is the only evidence upon this question, he never saw the instrument, or knew of its execution. Burks, however, did sign the promissory notes, the recitals of which charged him with a knowledge of the execution of the instrument in the form of a deed made to him by Breneman and wife to their homestead, but he swore upon the trial that he never read the notes and did not know their contents.

According to Breneman's testimony, which we believe is true, for it is not contradicted by anybody, the instrument made by himself to Burks was never intended by him to pass title, but was simulated and made by him for the purpose of using the notes recited in the deed as a part of the consideration (two of which are the notes sued upon), for the purpose of satisfying demands against him of clients whose money he had collected as an attorney at law, and he had appropriated to his own use and benefit.

The appellee, Charles Mayer, acquired the note sued on by him from Bloom, Cohn & Co., the parties to whom it had been assigned by indorsement by C. K. Breneman in satisfaction of their claim against him for money he collected as their attorney, before maturity thereof, for a valuable consideration, and without notice of any vice or defect in the

consideration thereof, or in the lien appearing to secure the payment of the same. In acquiring the note he relied upon the validity of the lien recited therein, and was induced thereby to purchase said note for value.

T. W. Freeman, the testator of appellee, C. W. Freeman, acquired the note sued on by indorsement from C. K. Breneman, before maturity thereof, for a valuable consideration, and without notice of any vice or defect in the consideration thereof, or in the lien appearing to secure the payment of the same.

Besides the indorsement of the note by C. K. Breneman to Freeman, the following written assignment thereof was made by Breneman and wife:

"The State of Texas, County of Bexar: Know all men by these presents, that whereas, on the 4th day of March, 1897, we, Cassius K. Breneman and Susan A. Breneman, his wife, for a valuable consideration, made, executed, and delivered to Henry E. Burks, of the county of Bexar and State of Texas, a deed of conveyance, conveying to the said Henry E. Burks lot fifteen in block fifteen, with all the improvements thereon, situated on the corner of St. Mary's and Pecan streets, in the southwest angle of the same, in the city of San Antonio, Bexar County, Texas, the said lot having a front of 20 varas on Pecan Street and running back between parallel lines 60 varas to an alley; and whereas, for a part of the purchase money of said property, the said Henry E. Burks made, executed, and delivered to Cassius K. Breneman, three certain promissory notes for the sum of twenty-five hundred dollars, one thousand dollars, and fifteen hundred dollars, respectively, one of said notes being number two, and reading as follows: [Here follows copy of note.]

"The aforesaid note represents a part of the unpaid purchase money for the property herein described, and is a vendor's lien thereon, as will more particularly appear by the deed of conveyance hereinbefore referred to, and recorded in the records of Bexar County, in Vol. No. —, on page —.

"And we, the said Cassius K. Breneman and Susan A. Breneman, his wife, do hereby transfer and assign to T. W. Freeman the aforesaid promissory note, and guarantee to him the payment of the same the interest thereon according to its tenor and effect, and we do hereby covenant with the said T. W. Freeman that there are no other outstanding prior liens on the land and premises mentioned in the said note and in the said deed of conveyance, save and except the three notes aggregating as above five thousand dollars, and that the same are still due, owing and unpaid; and that we have the superior title to the said land and premises, and have the right to dispose of the said promissory note herein set out, and that the said T. W. Freeman by this transfer acquires full right and title to the same.

"And we, the said Cassius K. Breneman and Susan A. Breneman, his wife, do hereby grant, sell, and convey unto the said T. W. Freeman,

pro tanto, the superior title and all our rights, title, and interest in and to one-fifth of the said land and premises.

"To have and to hold the same unto the said T. W. Freeman, his heirs and assigns forever; hereby subrogating him to all our rights as vendors of the said land and as payees of the said note.

"In witness whereof, we hereunto subscribe our names at San Antonio, Texas, this the 6th day of March, 1897.

(Signed) "C. K. BRENEMAN,<br>(Signed) "SUSAN A. BRENEMAN."

Which was acknowledged by them as follows:

"The State of Texas, County of Bexar: Before me, Chas. C. Smith, a notary public in and for said county and State, personally appeared Cassius K. Breneman and his wife, Susan A. Breneman, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and considerations therein expressed. And the said Susan A. Breneman, wife of Cassius K. Breneman, having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said Susan A. Breneman, acknowledged said instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and considerations therein expressed, and that she did not wish to retract it.

"Given under my hand and seal of office, this, the 18th day of March, 1897.

[Seal]                      (Signed) "CHAS. C. SMITH,
                    "Notary Public, Bexar County, Texas."

Henry E. Burks, the grantee in the deed, is appellant's son-in-law, and was, with his wife, living with Breneman and wife in their residence when the notes sued upon were executed.

*Conclusions of Law.*—The case was submitted to the jury upon the following special issues:

"1. Did Charles Mayer, the plaintiff in this cause, acquire the note sued on by him herein before the maturity thereof, for a valuable consideration, and without notice of any vice or defect in the consideration thereof, or in the lien appearing to secure the payment of the same?

"2. Did T. W. Freeman, deceased, acquire the note sued on before maturity thereof, for a valuable consideration, and without notice of any vice or defect in the consideration thereof, or in the lien appearing to secure the payment of the same?

"3. Did Susan Breneman, one of the defendants herein, appear before C. C. Smith, a notary public of this county, for the purpose of acknowledging her signature to the deed signed by herself and her hus-

band, and in evidence before you, and purporting to convey to H. E. Burks the homestead of said Brenemans in this city?

"4. Should you answer question No. 3 in the affirmative, you will next answer the following question: Did said notary C. C. Smith fully explain the contents of said deed to said Susan Breneman, defendant, separate and apart from her husband, and did she, the said Susan Breneman, then and there, separate and apart from her husband, acknowledge and declare before said notary that she executed said deed freely and willingly, and that the same was her act and deed, and that she executed the same for the purposes and consideration therein expressed, and that she did not wish to retract it?"

Its submission in this manner is assigned as error upon the ground that neither one or all the parties to the suit requested such submission. It is provided by article 1333, Revised Statutes, as amended by General Laws Twenty-sixth Legislature, page 190, that a case can not be submitted to a jury upon special issues by the court unless one or all parties to the suit requested such submission. To the bill of exceptions taken to the action of the court in submitting the cause upon special issues, the trial judge appends the following statement and explanation:

"That part of this bill of exception that states 'That upon the trial of this cause, the court, without being requested by one or all the parties to the suit either in writing or verbally in open court, submitted this case to the jury upon the following special issues,' is not allowed, except as stated in the following qualification, and the remainder of said bill is allowed as qualified, viz: That before defendant's counsel had addressed the jury, I invited the attorney for defendant and counsel for plaintiffs into my private office at the noon hour and stated to them that I thought the only issues to be submitted to the jury were whether or not the plaintiff and intervener were innocent purchasers for value and without any notice of the nature of the transactions between Breneman and wife and Burks, and whether or not the deed was duly acknowledged by Mrs. Breneman as shown by the certificate of the notary. Colonel Upson, attorney for defendant, insisted that there were other and vital issues to be submitted, and requested to be heard on them upon the convening of court. Colonel Upson, attorney for defendant, made his legal argument to the court and addressed the jury upon the facts during his argument to the jury. Mr. Aubrey, one of the attorneys for plaintiff, submitted to me in writing three special issues to be submitted to the jury (without calling same to the attention of defendant's counsel), in substance the same that were submitted, and being of the opinion that they were not full enough, I added the fourth question submitted by the court and contained in this bill of exceptions."

Neither the form nor manner of making the request for the submission of the cause on special issues is prescribed by statute. But we think that where, as in this case, the trial judge and the attorneys for appellant and appellee have discussed the question of submitting the case to the jury upon special issues, and only the attorney for appellant objecting, one of the attorneys for appellee, after such discussion, and

after counsel for appellant had been heard by the court upon this very question, presented to the court in writing three special issues to be submitted to the jury, and such issues being submitted, with a fourth one added by the court, under the law, constituted a request by one of the parties to the suit to submit the case to the jury on special issues. The issues thus submitted were the only material issuable facts upon which there was a particle of conflicting testimony, and we think it was eminently proper for the trial judge in this charge to divest the case of everything else and submit such issues for the determination of the jury upon the request of counsel for appellees made in the manner above stated.

The following assignments of error are considered together in appellant's brief, and will be so treated by us:

"Second. The court erred in not submitting to the jury all the material issues between the parties, as made by the pleadings in this case, viz: (a) The issue as to the nondelivery and nonacceptance of the deed from this defendant and her husband, of date March 4, 1897, to the defendant Burks, introduced, set up, and relied upon by the plaintiff and intervener; (b) the issue as to the nonintention of the parties to the deed of March 4, 1897, to transfer any title to the property described in said deed; and (c) the issue as to this defendant being induced to sign and acknowledge said deed through fraud, misrepresentation, and concealment, each of these three material issues being fully set forth in this defendant's first amended original answer herein; this defendant having in writing specially requested the court to charge the jury upon each and all of these matters, and this defendant having introduced evidence in support of each and all of them.

"Third. The court erred in refusing to submit to the jury the following special charge number 1, as requested in writing by this defendant, to wit: 'If you believe from the evidence, that there was no delivery of the deed from Breneman and wife to Burks; that the grantors did not intend to convey the property described in said deed; and that the grantee Burks did not intend to purchase said property, and did not accept a deed therefor, said deed transferred no title to said property, and no one could acquire any rights under the same,' because the same presented material issues in said cause upon which the jury were uninstructed, and the same were supported by uncontradicted testimony introduced on the trial of the cause.

"Fourth. The court erred in refusing to submit to the jury the following special charge number 2, as requested in writing by this defendant, to wit: 'If you believe from the evidence that the acknowledgment by the defendant Susan A. Breneman of the deed in question was not made in accordance with the statute,—that is, if there was no privy examination of her as to said deed; that the same was not explained to her by the notary,—then said deed was not binding upon her, and was no conveyance by her of said property, and passed no title thereto,'— because the same presented a material issue in said cause upon which

the jury were uninstructed, and evidence pro and con was introduced on the trial of the cause.

"Fifth. The court erred in refusing to submit to the jury the following special charge number 3, as requested in writing by this defendant, to wit: 'If you believe from the evidence that the defendant Susan A. Breneman signed the deed in question under misrepresentation and deception, believing the same was a promissory note, and had no knowledge of the contents of said deed, the same is not binding upon her,'— because the same presented a material issue in said cause upon which the jury were uninstructed, and the testimony introduced on the trial fully supported the same.

"Sixth. The court erred in refusing to submit to the jury the following special charge number 4, as requested in writing by this defendant, to wit: 'The instrument set up by the intervener in this case, with the transfer thereof, being in the nature of a mortgage, or to create a lien upon the homestead of the defendant Susan A. Breneman and her husband, is absolutely void and creates no valid lien upon said homestead, and you can not consider the same, only as you may believe the same may discredit the testimony of the defendant Susan A. Breneman; but not as a valid lien, or as establishing any lien upon said homestead. Therefore you will find that the intervener in this case has no right of foreclosure of lien on said homestead or any part thereof,'—because the same presented a material issue in said cause upon which the jury were uninstructed, and the undisputed testimony fully sustained the same.

"Seventh. The court erred in submitting this case to the jury upon said special issues alone, and in failing, as required by the statute, to submit all the material issues made by the pleadings, and this defendant having in writing specially requested the court to charge the jury upon the nondelivery of the deed of March 4, 1897, to Henry E. Burks, and the nonacceptance of the said deed by said Burks, these being material issues made by the pleadings, and this defendant having introduced evidence, uncontradicted, in support thereof.

"Eighth. The court erred in submitting the case to the jury upon said special issues alone, and in failing, as required by the statute, to submit all the issues made by the pleadings, and this defendant having in writing specially requested the court to charge the jury on the question of fraud practiced on this defendant in obtaining her signature to the deed of March 4, 1897, by misrepresentation, and in obtaining her acknowledgment thereto without any knowledge upon her part of its contents; these being material issues made by the pleadings, and this defendant having introduced evidence in support of them.

"Ninth. The court erred in submitting the case to the jury upon said special issues alone, and failing, as required by the statute, to submit all the material issues made by the pleadings; and this defendant having in writing specially requested the court to charge the jury that the instrument dated March 6, 1897, acknowledged March 18, 1897, set up by the intervener, and by and through which he claims this

defendant and her husband transferred and assigned the $1000 note to T. W. Freeman, was absolutely void, because it was in the nature of a mortgage, or intended to create a lien upon the homestead of the defendant Susan A. Breneman and her husband; this being one of the issues made by the pleadings and this defendant having introduced evidence in support thereof.

"Tenth. The court erred in the special issues submitted to the jury, because they do not embrace all the material nor the real issues made by the pleading in the case; and because the said special issues submitted are misleading, and prevented the jury from considering and passing upon issues set up by this defendant, material to her defense and which she had introduced evidence to support."

It will be seen that the issues specified in the second assignment of error are embraced in several charges embodied in the other assignments. The testimony is uncontroverted that there was no delivery of the deed from Breneman and wife to Burks; that the grantor did not intend to convey the property described by said deed; that the grantee Burks did not intend to purchase the property and did not accept a deed therefor. It would have served no purpose to have submitted these matters, shown by the uncontroverted testimony to be facts, for the determination of the jury.

It may be conceded, by reason of such facts, that ās between the grantors and grantee no title passed to the property in controversy, but it does not follow from them that the law is, as requested by appellant in the charge, that "no one could acquire any rights under the deed." Breneman did acquire the promissory notes sued upon, and with them settled claims for money of his clients which he had appropriated; and, in addition, received money upon the notes equal to the difference between the amounts of the demands against him and their face value. This he was enabled to do by reason of himself and wife having executed and acknowledged the deed to Burks, and having the same placed upon record. He nor his wife is in an attitude to say that in doing so he was not exercising a right. It would be a travesty upon the law and an outrage of justice to say under these circumstances that bona fide holders of such negotiable promissory notes, acquired for a valuable consideration before maturity, upon the faith of the vendor's lien expressed therein, acquired no rights under the foregoing uncontroverted facts.

Burks having executed the notes which recite that they are given in part payment of the purchase money for lot 15, block 15, with all the improvements thereon, situated at the southeast corner of St. Mary's and Pecan streets, San Antonio, Bexar County, Texas, and that it is the same property deeded to him upon the day the notes were executed by Cassius K. Breneman and Susan A. Breneman, his wife, could not be heard to say, as against bona fide holders of the notes for value, for the purpose of defeating the lien therein expressed, that the deed recited in the notes was never delivered to him. Nor can the grantors

who duly executed and acknowledged the deed and received the notes from the grantee and placed them in circulation, be heard to say, as against bona fide holders for value, who acquired the notes relying upon the validity of the lien recited in them, as well as the recitals in the deed upon record, that such deed is invalid, and no lien exists, because they never intended to and never did deliver the deed to the grantee. Where a husband and wife by warranty deed duly executed convey their homestead, reserving a vendor's lien, and the husband has the deed properly recorded, and afterwards transfers the purchase money notes secured by such lien before maturity, for value and without notice, it is immaterial whether the deed passed title to the grantee or not, so far as innocent third parties are concerned. Hurt v. Cooper, 63 Texas, 362; Eylar v. Eylar, 60 Texas, 315; Heidenheimer v. Stewart, 65 Texas, 321; Laughlin v. Canal Co., 65 Fed. Rep., 441; Blight v. Schnencke, 51 Am. Dec., 478.

The special issues submitted to the jury by the court comprehend the facts asked to be submitted embraced in appellant's fourth and fifth assignments of error. The instrument referred to in the sixth and ninth assignments of error is copied in our conclusions of fact, and it will therefrom be seen that it is not in the nature of a mortgage, as is contended in the assignments of error, but a written transfer, made and acknowledged by appellant and her husband, of the $1000 note to intervener's testator.

We have already disposed of the eighth and tenth assignments of error by holding that the court submitted the case to the jury upon the request of appellee's counsel upon special issues, and that the issues submitted comprehended all the controverted facts.

It is contended by appellant, under the eleventh and twelfth assignments, that in submitting the case to the jury upon special issues the court erred in not submitting the questions, "(1) whether plaintiff and intervener relied upon the lien set up by them to secure the payment of their respective notes at the time they acquired them; (2) who is a lawful and bona fide holder and owner of a note; (3) what constitutes an innocent purchaser; (4) what is essential to the validity of the deed of March 4, 1897, and to its proper delivery and acceptance; (5) what is meant by and what constitutes notice, vice or defect in the acquirement or consideration of a note; and in not giving the jury such instructions upon them as were appropriate and necessary to enlighten and aid them in reaching the proper conclusions." The failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or writ of error, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error an issue not submitted and not requested by all parties to the cause shall be deemed as found by the court in such manner as to support the judgment, provided there be evidence to sustain such finding. Rev. Stats., art. 1331. We have already held that the court did not err in refusing the special charges asked by appellant. The court having, upon the request of one of the parties,

submitted the cause on special issues, the appellant, if she desired any other issues specially submitted, should have requested their submission in writing; or, if she desired the jury to be instructed upon the issues that were presented so that they could intelligently pass upon them, she should have evinced the desire by preparing and requesting the court to give proper instructions. Failing to do so, she will not here be heard to complain of the failure of the court to give such instructions upon the issues submitted as she thought might have been appropriate and necessary to enlighten and aid the jury in reaching proper conclusions.

The appellant did not request the court to submit to the jury the question as to whether or not the evidence showed that the notary, C. C. Smith, in taking her acknowledgment to the deed of March 4, 1897, showed said deed to her. The evidence was amply sufficient to show that the notary did, at the time her acknowledgment was taken, show the deed to her, and if such fact is necessary to sustain the judgment, it will be deemed as found by the court. Rev. Stats., art. 1331.

Under the fourteenth assignment of error the appellant asserts the following proposition: "The acknowledgment certificate to the deed of a married woman, when she conveys her homestead, is an essential part of the deed, and it is fatally defective, and the deed is absolutely void, unless it recites not only that she has had the same shown to her by the officer taking the acknowledgment, but also, in all respects, literally complies with the requirements of articles 636 and 4618, Revised Statutes of 1895. In other words, that it is imperatively required by the express provision of the statute that the instrument purporting to be executed by her and conveying her homestead, shall be shown to her by the officer taking the acknowledgment; that it is a fact, material, essential to the conveyance of her homestead; and that and all other facts essential to her deed to her homestead prescribed by the law must be stated in the acknowledgment certificate, because, without such acknowledgment and the certificate thereof, as the statute prescribes (articles 636 and 4618, Revised Statutes of 1895), there can be no conveyance of the homestead of a married woman. The law requiring the officer to certify to such acknowledgment requires him to certify to certain facts set forth in articles 636 and 4618, and he is required to make this certificate, not for the purpose of placing the deed on record, so that it may operate as notice, because the statute (article 4621) prescribes a form for that certificate, and a substantial compliance with that form is sufficient; but in order that the deed may be completed by a certificate of all the acts and facts prescribed by and pointed out in articles 636 and 4618, which are essential to complete the deed; and the law, as it stands to-day, does not prescribe a form for such certificate."

The requirement in article 4618, Revised Statutes of 1895, that a conveyance executed by a married woman shall be shown to her when her acknowledgment thereto is taken, has been the law in this State since June 22, 1846. Hartley's Dig., art. 174; Pasch. Dig., art. 1003. The requisites and form of the officer's certificate to such acknowledg-

ment as shown by article 4620, Revised Statutes of 1895, is substantially the same as is prescribed by article 174, Hartley's Digest, and article 1003, Paschal's Digest. From which it will be seen that neither the statute nor form prescribed for the acknowledgment of a married woman taken to a conveyance of her homestead or her separate property has ever required that the certificate of the officer of her acknowledgment should state ·that she has had the instrument shown to her by such officer.

The certificate of acknowledgment of the appellant to the deed in question contains all the essential requisites prescribed by law, and to hold that the deed is void because the certificate does not show that the instrument was shown to her by the officer taking the acknowledgment, would be contrary to the statute prescribing the requisites and form of an acknowledgment, and every opinion of courts of last resort in this State in which the question of the validity of a married woman's acknowledgment is adjudicated. There is no merit either in appellant's fifteenth, sixteenth, seventeenth, eighteenth, twentieth, or twenty-first assignments of error.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.