## TEXAS MACHINERY & SUPPLY CO. v. AYERS ICE CREAM CO.

(Court of Civil Appeals of Texas. Dallas. Oct. 26, 1912.)

1. SALES (§ 120*)—RESCISSION OF CONTRACT.

Where there is no fraud and no agreement to return, the vendee cannot at his own option rescind the contract, but has only an action on the warranty for damages, but if, however, there is an express or implied agreement that the vendee shall not be required to keep the article if not such as was stipulated for, the contract may be rescinded and the goods returned by virtue of such agreement.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 294; Dec. Dig. § 120.*]

2. SALES (§ 358*)—MACHINERY—TESTS.

In an action for the purchase price of machinery, admission of evidence of a test made of the engine after the institution of the suit and by persons selected by the vendee was not erroneous, since the conditions of the test might affect the weight to be given to the evidence, but could not affect its admissibility.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1049-1055; Dec. Dig. § 358.*]

3. EVIDENCE (§ 195*)—MODELS—EXHIBITS IN COURT.

In an action for the purchase price of a machine, there was a proper foundation laid for exhibiting in court a model of an appliance for making a brake test, where there was evidence that the only difference between the brake used at the actual test of the engine and the model was that one was made of metal and the other of leather.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 680; Dec. Dig. § 195.*]

4. EVIDENCE (§ 271*)—LETTERS—SELF-SERVING STATEMENTS.

In an action for the purchase price of an engine, the mere fact that a letter was written after filing of the suit by the purchaser was not sufficient to sustain a contention that the letter was self-serving, immaterial, and irrelevant, especially where at the time the letter was written defendant did not know that the suit had been filed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068-1079, 1081-1104; Dec. Dig. § 271.*]

5. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—EVIDENCE.

In an action for the purchase price of an engine, the admission of a letter in which defendant alleged failure of the plaintiff to come up to its guaranty, charged refusal of the plaintiff to make proper test, and asserted extra expense, etc., was not prejudicial error, where previous letters had been written alleging the same failure which were in evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153-4157, 4166; Dec. Dig. § 1050.*]

6. TRIAL (§ 351*)—SUBMITTING CASE ON SPECIAL ISSUES.

Though the present statute does not allow the submission of a case on special issues without a request for such submission by one of the parties to the suit, where the record shows that both parties requested in writing that certain issues be submitted for the determination of the jury, and there was nothing to show that either party objected to that method of submitting the case or preferred the submission of the case on a general charge, such facts under the law constitute a request by the parties to the suit that the case be submitted to the jury on special issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 834-839; Dec. Dig. § 351.*]

7. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES.

That the court did not submit to the jury a special issue, "Did the plaintiff through its engineer, M., operate said engine for five days in the month of July, 1910?" was not error where the same was sufficiently submitted by the court in another special issue, to which the jury answered that "no test as required by the contract was ever made."

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212-4218; Dec. Dig. § 1062.*]

8. APPEAL AND ERROR (§ 500*)—INSTRUCTIONS—RECORD.

Where the record fails to show what action, if any, was taken by the court as to a requested charge, nor whether the charge was given or refused, the court's action cannot be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295-2298; Dec. Dig. § 500.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by the Texas Machinery & Supply Company against the Ayers Ice Cream Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Hiram F. Lively, of Dallas, for appellant. Thomas & Rhea, of Dallas, and Gustavus & Jackson, of Amarillo, for appellee.

TALBOT, J. This suit was instituted by the appellant, a corporation domiciled in the city of Dallas, Dallas county, Tex., against the appellee, a corporation domiciled in Amarillo, Potter county, Tex., on a written contract entered into March 16, 1910, by the parties, to the effect that the appellee purchased from appellant one 50 horse power Fairbanks-Morse engine and attachments complete, and one generator F. M. frame, No. 20 T. R. type direct current, all of which is fully described in the petition and exhibits thereto. Appellant sued to recover on said contract three deferred payments of $731.75 each, with interest and attorney's fees. The contract provided for the method of installing the engine, that it was to be a 50 horse power Fairbanks-Morse, horizontal, throttling governor fuel engine, speed 190 revolutions per minute. It further provided as follows: "Erection: Purchaser agrees to have preparations for erection of machinery complete on its arrival at destination, and will then notify the company at its office in Dallas. The company will then send a competent erecting engineer at the company's expense, who will superintend the erection of the ma-

chinery and do all work requiring skilled labor, purchaser to furnish any common labor, hauling, build foundations and necessary buildings. * * * Guarantee of Duty: When the machinery is properly installed, Texas Machinery & Supply Company will operate it five days, demonstrating that it will operate successfully as follows: First, that the engine will deliver the actual horse power as specified in this contract; second, that the engine will operate successfully and furnish good reliable power without other attention than keeping it clean, starting and stopping it, and supplying fuel and lubricating oil; third, that the engine will operate successfully upon gasoline, naphtha, kerosene, distillate or solar oil, and will produce one horse power per hour of one-half cent, basing cost of said fuel at four and one-half cents per gallon." There were further provisions in the contract to the effect that as soon as the machinery was ready to test, and until accepted and settled for, the purchaser agreed to furnish a competent engineer and other help, also fuel, water, oil, waste, lights, and other incidentals needed to operate the same, and at all times to render friendly and needed assistance to facilitate the erection and testing of the machinery; that, if at the expiration of the five days employed in demonstrating that the engine would operate successfully the machinery performed according to contract, the purchaser agreed to give the engineer of the appellant an unconditional written acceptance of the same; that, if at the end of test or such time as the appellant claimed to have fulfilled the contract, the purchaser failed or refused to give such acceptance, he would immediately notify the appellant at its office in Dallas in what particulars he claimed the machinery defective or deficient, and that the appellant should then have a reasonable time to remedy such defects or deficiencies as might exist, but that, in case it should appear to be beyond the power of appellant to make the machinery perform according to contract within a reasonable time, then the appellant should have the privilege of removing the machinery after 30 days' notice, it having refunded to appellee all money paid by it on same; that the use of the machinery for 10 days after the time specified for said notice of defects without giving such notice should constitute an acceptance of the machinery by appellee as a fulfillment of the contract. The contract further provided that the Texas Machinery & Supply Company did not relinquish its title to the property sold until the same was fully paid for, and, upon default of the appellee in the performance of any of the terms of the contract, the appellant or its agents might, without process of law, take possession of and remove the property and sell the same as under execution.

On April 3, 1911, appellee filed its first amended answer and a cross-bill, and, after demurrers and a general denial, alleged, in substance, that it entered into a contract set out as Exhibit A to appellant's petition, for the purchase of machinery therein described, and relied upon the representations and guaranties therein contained; that appellant, through its employés, attempted to install said machinery, but that such installation was defective, and that the appellant had failed and refused to comply with its representations and guaranties of duty to test said engine, and to demonstrate that said engine would deliver 50 horse power, as represented, and would operate successfully as set forth in said contract; that said engine and the appliances furnished therewith were defective; that said engine was weak, and would not deliver exceeding about 35 horse power, and would not operate on solar oil, and alleging other defects in said engine, and further alleged that appellant had wholly failed to comply with its contract, and furnish machinery as described, represented, and guaranteed in its said contract, and that the appellee had never accepted the said machinery delivered to it, but notified the appellant of the defects aforesaid and requested that said machinery be removed and that it be refunded the amount paid thereon.

Appellee sought by its cross-action to recover of appellant damages by reason of the use of said machinery in the purchase of a more expensive grade of oil and for the expense of water for the running of said engine, and for further expense for electric current to operate its said plant, and for belts, fuel, etc., in the aggregate amount of $1,128.82, and asked for a rescission of said contract, and judgment for the $731.75 paid on said machinery and damages in the sum of $1,128.82. The appellee in the event it should be held that it accepted the machinery described in said contract, which it did not admit, but denied, further alleged that said machinery was wholly worthless to the appellee for the purposes for which it needed an engine, and alleged that the consideration mentioned for the purchase of said machinery had wholly failed, and prayed for the recovery of the advance payment thereon in the sum of $731.75.

The appellant in its supplemental petition filed April 3, 1911, after several special exceptions and a general denial, specially denied that it was liable to the appellee for any of said damages set forth in its said answer, and alleged that the appellee changed the installation of said machinery, and failed to keep said engine adjusted, and failed to furnish the proper foundation for the erection of same, and that the said appellee failed to keep its covenants and agreements in said proposal and contract, and failed to furnish a competent and efficient engineer to operate said engine, as it had agreed to do under its said contract, between the time of

the installation of said machinery and the acceptance by the appellee, and that if said engine failed to operate successfully, as provided in said contract, that it was the fault of the appellee in failing to furnish a competent and efficient engineer to operate same; that the pump and the manner of furnishing said engine with water in the operation thereof had been changed from that made by the appellant at the time of the installation without notice to appellant; that said engine had been changed in its installation without notice to appellant, had been damaged and injured by the running thereof under the direction of appellee. It further alleged that the appellee failed to furnish water, fuel, and proper attachments for the proper testing of said engine, and that the reason same had never been tested in accordance with the contract was the fault of appellee in its hostile attitude toward the appellant, and that the appellee had never given the appellant notice to remove said machinery prior to the filing of this suit, and that appellee had used same for a number of months, accepting and enjoying the rents and fruits thereof. Appellee on April 3, 1911, filed its first supplemental answer, consisting of general denial and special exceptions, and alleged that it had notified appellant of the defects and insufficiencies in said machinery, alleging the dates of such notices as July 14th, July 23d, August 8th, August 16th, August 23d, September 25th, October 4th, October 15th, and November 3d, in the year 1910, and alleging that it had operated said machinery upon the express authority and direction of F. L. Fisher, the authorized agent of appellant, who pretended to erect said machinery, and specially denied that the test of five days was ever made. By a trial amendment appellee alleged that two belts were furnished with said engine under said contract, and, by reason of the defects and imperfections in said engine, they were worn out and had to be replaced at an expense of $34.82, and further alleged an additional expense on the part of appellee in the operation of said machinery on account of the excess in the price of fuel that was necessary to operate said engine over the price of that guaranteed in said contract to operate on.

The court submitted the case on special issues and the jury found the facts so submitted to it, as follows: First, that the appellant substantially complied with its contract in furnishing the machinery described in the contract; second, that possibly the machinery furnished could have been made to meet the requirements of the contract, but that it was never made to do so; third, that appellee never did accept the machinery as satisfactory and in compliance with the contract; fourth, that the engine was not a 50 horse power engine; fifth, that it would not operate successfully and furnish good reliable power with no other attention than keeping it clean, starting and stopping it, and supplying fuel and lubricating oil; sixth, that it would not operate successfully on solar oil, and would not produce one horse power per hour for ½ cent, basing the cost of fuel at 4½ cents per gallon; seventh, that appellee furnished proper foundation for the machinery; eighth, that appellant did not furnish a competent engineer to properly install the engine; ninth, that appellant did not make the test as agreed in the contract; tenth, that appellee did not waive the test and accept the machinery; and, eleventh, that appellee, before it knew of any suit, notified appellant of its rescission of the contract. Upon the findings of the jury, judgment was rendered rescinding the contract sued on, that appellant take nothing by its suit, that appellee recover of appellant $731.75 paid on the purchase of the machinery, together with $11.85 interest and the further sum of $34.80, as damages alleged by appellee to have been sustained in replacing belts. It was further decreed that appellant should have the right to remove the machinery within a reasonable time from the date of the judgment upon the payment of the amount recovered by appellee.

The leading question arising on the appeal is presented by the second assignment of error and proposition urged under it. This assignment is as follows: "The trial court erred in overruling and in not sustaining plaintiff's special exception No. 10 to the defendant's first amended original answer, for the reason that defendant's said answer, in paragraphs Nos. 3, 4, and 5, failed to show any cause for the cancellation of said contract or any right of recovery from this plaintiff of part of the purchase money paid by defendant. It fails to allege a failure as to all of the machinery purchased by the defendant from the plaintiff, but confines such allegations to the engine alone, and the purchase money paid was on all of said machinery. There are no allegations in said petition alleging that said machinery as a whole had failed to perform its functions in accordance with the terms of said warranty, or that said warranty had failed for any reason, for which plaintiff was liable." The proposition contended for is that "the right of rescission of contract for the purchase of machinery between parties, and the recovery of part of the purchase money paid thereon, obtains only when such machinery has wholly failed, or in case of a part failure and tender of the return of the goods so contracted for, in good condition, is made by the party asking for such rescission, or where fraud is alleged and proven." The evidence was conflicting as to whether there was a breach of the warranties pleaded by the appellee, but there was no testimony tending to show that the machinery in question was utterly worthless and of

no value whatever, nor was there any testimony offered showing the difference between its real value and the value it was warranted to be. This was doubtless for the reason that appellee did not seek compensation in damages alone for the alleged breach of warranty on the part of appellant, but proceeded in the trial of the case upon the theory that because of such breach it had the right to rescind the contract, and recover certain special damages alleged to have been sustained on account of the breach.

[1] The trial court sustained exceptions to all of the allegations of damages except those seeking to recover the item of $34.82, which appellee claimed it was forced to furnish on account of defects and imperfections in the engine, but seems to have concurred with appellee in the view that, under the facts shown, it had the right to rescind the contract and recover the amount paid thereon. Was this the correct view? It seems to be settled law in this state that "where there is no fraud and no agreement to return the vendee cannot, at his own option, rescind the contract, but has only an action on the warranty for damages, the measure of which is the difference between the value of the article as it is and as it was represented to be." If; however, there is an express or implied agreement that the vendee shall not be required to keep the article if not such as was stipulated for, the contract may be rescinded, and the goods returned. It is said that in such case the goods are returned by virtue of the agreement. Wright v. Davenport, 44 Tex. 164. The record shows that appellant's demurrer, the overruling of which is made the basis of the assignment under consideration, was that paragraphs 3, 4, and 5, of appellee's answer "were insufficient in law and show no cause of action or defense against this plaintiff." This demurrer, though called a "special exception," is but a general demurrer, and we have reached the conclusion that appellee's pleadings were not obnoxious to it. If the contract sued on does not expressly provide for a rescission for failure on the part of appellant to comply with certain of its terms, it seems reasonably clear that it does import an implied agreement that appellee should not be required to keep the machinery purchased of appellant if the same proved not to be as represented or the warranties in the contract breached. This conclusion is warranted by the provisions of the contract itself, interpreted in the light of the testimony showing the evident intention of the parties, and especially by that provision which authorizes the appellant to take the machinery and remove it in the event it appeared to be beyond the power of appellant to make it perform according to contract within a reasonable time. If this construction of the contract is correct, the appellee's pleadings attacked by the demurrer were sufficient. •

150 S.W.—48

[2] The fifth assignment of error complains of the admission of testimony over the objection of appellant, of a test made of the engine in question at the instance of appellee in the month of February, 1911, after the institution of this suit. We think there was no material error in the admission of this testimony. It appears that at the time this test was made the engine was properly adjusted, the test made in a proper manner by one experienced in operating machinery, and that appellant's agent, Fisher, representing it in the town where the machinery was situated, was notified that the test would be made and asked to be present. That the test was made after the institution of the suit and by persons selected by appellee might affect the weight to be given to the testimony, but could not affect its admissibility.

[3] Nor did the court err in permitting the testimony in reference to the model exhibit in court, as complained of in appellant's sixth assignment. The witness Ayers testified that he helped with the test in February, 1911, and described very fully the appliance used for making that test and said that it was the Proney brake test; that he saw and understood the test made by appellant's engineer Carsey in November, 1910, and the appliances used; that the test made by Carsey was the Proney brake test; that the appliance used in the February, 1911, test was the same kind of appliance used by Carsey in the November test. He testified the model exhibit in court was a correct model of the appliance used in the February test; said he knew it to be a correct representation. Appellant's agent, Fisher, said that the model represented the theory on which the Proney brake test is constructed and used and Carsey offered as an expert by appellant, and who, appellant claims, made the test provided for in the contract in November, 1910, testified that the difference between the brake used by him and the model was simply that one was made of metal and the other leather.

What has been said disposes also of appellant's seventh and eighth assignments of error.

[4] The tenth assignment of error is that the "trial court erred in admitting in evidence and permitting to be read to the jury the letter written by J. S. Ayers to the plaintiff on November 3, 1910, for the reason that said letter was written after this suit was filed; that same was self-serving, incompetent, and immaterial to any issue in this case; that the admission thereof was injurious and prejudicial to the rights of plaintiff, all of which more fully appears in plaintiff's bill of exception No. 6, and was admitted over objection of the plaintiff." The bill of exception referred to in the assignment recites that the court over the objection of the plaintiff admitted the letter written by J. S. Ayers to the plaintiff on

November 3, 1910, in which letter defendant alleged failure of this plaintiff to come up to its guaranty, charged refusal of this plaintiff to make proper test, asserted extra expense had been incurred in getting required fuel, labor, etc., and declared that he was compelled to look for another engine; to which action of the court in admitting the letter plaintiff in open court excepted on the ground that said testimony was irrelevant, incompetent, and immaterial to any issue in said cause, and was self-serving, for the reason that said letter was written 10 days after this suit had been filed and said letter was injurious to the rights of this plaintiff, "and plaintiff here and now in open court tenders this, its bill of exception No. 6, and prays that same be examined, signed, approved, and ordered filed by the court as a part of the record in this cause." From the bill it appears that the only reason urged in the trial court in support of the contention that the letter in question was "irrelevant, incompetent, immaterial, and self-serving" was the fact that it was written after the suit was instituted. We do not, especially in view of the facts, concur in this contention. At the time this letter was written appellee, nor any of its officers, was aware that the suit had been filed, and was led to believe by appellant that the matters in dispute would be further considered for adjustment.

[5] The appellant agreed in its contract of sale that, "when the machinery is properly installed," it would make a five days test "demonstrating that it will operate successfully," and do certain things, and providing, as we have held, for rescission if it did not. On July 14th appellee wrote complaining of improper installation. Again on July 23, 1910, and on July 29, 1910, appellee complained of improper installation and the failure of appellant to comply with the contract as to guaranties. To this last letter the appellant replied promising to send a man to fix the engine properly and to make the tests. On August 8, 1910, appellee wrote appellant telling them to have a man come at once, to have him prepared to make the tests as to horse power and as to the use of fuel. Appellee continued to demand compliance with the contract and appellant promised to send its man to do the work and make the tests, as shown by several letters. On October 27th the man came, and on November 1st left, after having operated the engine for only a few minutes, and not making any of the tests required by the contract. On the 1st of November, and before appellant's man left, appellee wired appellant's home office as follows: "Your Mr. Carsey has made no test of engine; says he will not. We demand that the test be made now." To which appellant replied on November 2,

1911: "Will advise you regarding tests when Mr. Carsey returns." The appellant did not advise any further, but on November 2d filed this suit, and on November 3d the letter complained of was written. We conclude the admission of the letter, under the facts in evidence, did not constitute reversible error, if error at all.

[6] There was no error in submitting the case to the jury on special issues. It is true the present statute does not allow the submission of a case on special issues without a request for such submission by one of the parties to the suit, but the record shows that both appellant and appellee requested in writing that certain issues be submitted for the determination of the jury, and there is nothing to show that either party objected to that method of submitting the case or preferred the submission of the case on a general charge. This, under the law, constituted a request by the parties to the suit that the case be submitted to the jury on special issues. To this effect is the case of Breneman v. Mayer, 24 Tex. Civ. App. 164, 58 S. W. 725, in which a writ of error was denied by the Supreme Court.

[7] The twelfth assignment charges that the court erred in failing to submit to the jury the following special issues asked by appellant: "Did the plaintiff, the Texas Machinery & Supply Company, through its engineer, Mr. Mitchell, operate said engine for five days in the month of July, 1910?" There was no error in refusing to submit this issue, for the reason, if no other, that the same was sufficiently submitted by the court in the ninth special issue, and was by the jury answered that no test as required by the contract was ever made.

[8] The fourteenth assignment of error complains that the court erred in refusing to give a certain special charge requested by appellant. The record fails to show what action, if any, was taken by the court in reference to this charge. It does not appear whether the charge was given or refused. The court's action, therefore, cannot be reviewed by this court.

The charge given by the court in connection with the ninth special issue submitted to them and made the basis of appellant's fifteenth assignment of error was not upon the weight of the evidence, but was in our opinion a correct application of the law to the facts.

The assignments of error not discussed have been carefully examined. It is believed that none of them discloses reversible error. The evidence was sufficient to authorize the findings of the jury, and, finding no error requiring a reversal of the case, the judgment of the court below is affirmed.

Affirmed.