G. A. JONES v. T. D. BULL.

No. 7432.

1. **Fixtures—Attachment and Sale of Same as Personalty Void.** A cotton gin with stationary engine and press was shown to be a fixture. Attachment and sale of the gin, etc., as personal property, was void, and conferred no title on purchaser.

2. **Same—Case Adhered to.**—Hutchins v. Masterson, 46 Texas, 554, adhered to, as criterion by which the nature of chattels as fixtures may be determined.

3. **Intent Touching Fixtures.**—It having been shown that land was pur-

chased with intent to place upon it a cotton gin, and that such machinery afterwards was placed thereon and used: *Held*, that the question of intent relates to the time when the land was purchased and the machinery placed upon and attached to it. See evidence showing such intent to make the machinery a part of the realty so as to constitute it a fixture.

APPEAL from Eastland. Tried below before Hon. WILLIAM KENNEDY.

*R. B. Truly* and *De Berry & Wheeler*, for appellant.—1. The united application of the following tests determines whether a chattel has become an immovable fixture, viz.: 1. Its real or constructive annexation to the realty. 2. Its fitness or adaptation to the use or purposes of the realty with which it is connected. 3. The intention of the party making the annexation to make it a permanent accession to the freehold. This intention to be inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose or use for which the annexation is made. When such annexation, fitness, and intention are established by evidence uncontroverted, the law establishes its status as a fixture, and the chattel becomes in law a part of the land on which it is situated. Hutchins v. Masterson, 46 Texas, 554; Implement Co. v. Marshall Electric Co., 74 Texas, 605; Willis v. Morris, 66 Texas, 629.

2. Machines and other articles essential to the occupation of the building or to the business carried on in it, and which are affixed or fastened to the freehold and used with it, partake of the character of real estate and become a part of it, and pass by a conveyance of the land. Amos & Ferr., "Fixtures," ch. 4, 132, 151; Kittredge v. Woods, 3 N. H., 50; Powell v. Manufacturing Co., 3 Mason, 459; Goddard v. Chase, 7 Mass., 432; Gaffield v. Hapgood, 17 Pick., 192; Noble v. Bosworth, 19 Pick., 314; Kirwan v. Latour, 1 Har. & J., 289; Packet Line v. Manufacturing Co., 37 Am. Dec., 214; Hendy v. Dinkerhoff, 57 Cal., 3; Roddy v. Brick, 43 N. J. Eq., 218; Insurance Co. v. Semple, 38 N. J. Eq., 575.

3. A sale of personal property levied upon and sold as such confers no title on the purchaser, when it is shown that the property is a part of the realty, and that the realty was not sold with it.°

HENRY, ASSOCIATE JUSTICE.—This was a suit for a trial of the right of property.

Appellant was the plaintiff, and the property was in his possession when it was claimed by the appellee. The property in controversy was described as follows in the claimant's affidavit: "One Simmons cotton press, one eighty-saw Brown cotton gin, one 20-horse-power engine, stationary."

The issues upon the trial are stated as follows in appellant's brief:

The plaintiff claims the property:

"1. By virtue of a certain mortgage, judgment, foreclosure, and order

of sale, with deed thereunder, against one J. S. Jones, a former owner of the property.

"2. That the property is in law fixtures, and was annexed to and part of the realty on which it was situated at the time of defendant's levy of his attachment and sale and purchase thereunder.

"3. That at the time of the levy of defendant's attachment and sale thereunder, and long prior thereto, the plaintiff, claiming under the firm of J. S. Jones & Bros., was in possession of all of said property as lessee and pledgee, to secure a valid unpaid promissory note and other notes amounting to $1600, owing him by J. S. Jones & Bros. and J. S. Jones.

"4. That the property, being fixtures, was never subject to defendant's claim, and that defendant is not entitled to recover the property, the same never having been legally levied upon or sold to defendant.

"5. That the property had never been severed from the realty or detached from the realty, but had continuously remained in plaintiff's actual possession and control long after the levy of defendant's attachment, sale thereunder, and' pretended purchase of same.

"6. That defendant had made a false and fraudulent affidavit for the purpose of obtaining an order of sale to sell said property as perishable, with intent to defeat plaintiff's right to same.

"7. That defendant is not the owner of and has no right to the property or possession of same, and that plaintiff is the legal and equitable owner, and entitled to the property."

Defendant in his joinder of issue pleaded:

"1. That he had a valid debt against one J. S. Jones, and caused to be issued a writ of attachment against him, and levied upon the property in suit, which then was the property of J. S. Jones, and personal.

"2. That it was legally sold under order of sale from County Court, and purchased by defendant for $400, and that he is the legal owner of the property, and that plaintiff has no rights or interest therein.

"3. That the plaintiff's pretended debt was fictitious, and his suit of foreclosure fraudulent as to defendant."

The assignments of error present a number of questions which we do not think it is necessary for us to consider, as the determination of one of them is conclusive of the controversy.

The claimant caused the property to be seized by a writ of attachment as personal property, and unless it was such he had no right to recover.

There is no conflict in the evidence relating to this issue, and it was as follows: One acre of ground at Desdemonia, in Eastland County, was purchased by G. A. Jones & Co. for the exclusive purpose of erecting a gin house and flouring mill thereon, for the purpose of ginning and pressing cotton into bales, and grinding wheat into flour.

They built a gin house about 30x40 feet in size on the ground, intend-

ing to make it and all of the machinery thereon permanent, and to use the lot solely for ginning and milling purposes.

The house was a common box house with shingle roof, and had an engine room and cotton press room attached to it. The owners did not contemplate removing or changing any of the machinery.

The boiler was imbedded in a solid foundation of rock and mortar, and was placed on a solid foundation under the top of the ground, and was a stationary boiler. The engine was a 20-horse-power stationary engine, on a solid rock foundation. Solid rock and masonry were placed in an excavation in the ground and built up above the surface of the ground.

There were iron bolts running from the bottom of the foundation through the stone work, to bolt down and hold the engine in place, and it was secured on the top of this rock foundation. It was impossible to remove the engine without unscrewing and detaching it from these bolts and the foundation. The engine could not be securely held in its place to be operated without being placed upon such a foundation and fastened with such bolts, and before the bolts could be removed it became necessary to remove the foundation to a considerable extent.

The gin stand was set up on the floor of the gin house, but was not nailed or fastened to the floor otherwise than by nailing pieces of lumber around and against it to hold it in place. It was attached to the engine by shafting, wheel belts, and pulleys to operate it.

The Simmons cotton press was in a room built for it adjoining the main building. It was a square box about ten or twelve feet long. The press screw worked up and down into a hole in the ground dug for it about nine feet deep. The press was fastened to the floor around the hole.

In the case of Hutchins v. Masterson, 46 Texas, 554, it was said, that " the weight of modern authorities establishes the doctrine that the true criterion for determining whether a chattel has become an immovable fixture, consists in the united application of the following tests:

" 1. Has there been a real or constructive annexation of the article in question to the realty ?

" 2. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected ?

" 3. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold. This intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose or use for which the annexation is made.

" And of these three tests pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence of this intention." See Moody v. Aiken, 50 Texas, 74; Willis & Bro. v. Morris, 66 Texas, 628.

The question of intention relates to the time when the land was purchased and the machinery was originally placed upon and attached to it; and when so considered, we think every test suggested by the above rules for the purpose of making such machinery a part of the freehold was fulfilled.

The evidence does not admit of any other conclusion than that the property in controversy was a part of the realty. As that was the controlling issue in the case, and there was no evidence proper to be considered to the contrary, the court should have charged the jury to find for the plaintiff.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered June 3, 1892.