POTTER et al. v. MOBLEY. (No. 1137.)

(Court of Civil Appeals of Texas. Amarillo. March 28, 1917.)

1. SALES ☞120—RESCISSION—BREACH OF WARRANTY.
Where a contract for sale of silo contained a warranty, but no provision for return of property in case of breach, it was essential to the purchaser's right to rescind the contract that he show fraud therein, or that the silo was wholly unsuitable for its purpose.
[Ed. Note.—For other cases, see Sales, Cent. Dig. § 294.]

2. APPEAL AND ERROR ☞934(2)—SCOPE OF REVIEW—PRESUMPTIONS.
In action for breach of warranty of a silo where no issue was submitted whether the contract was induced by fraud or the silo was worthless, and plaintiff by trial amendment alleged fraud, but the evidence was insufficient to authorize submission of such issue to the jury, the court on appeal cannot assume in support of the judgment that the trial court so found.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777.]

3. FIXTURES ☞21—RIGHT AS BETWEEN VENDOR AND PURCHASER.
If when a silo was being erected on the land it had been understood and agreed between the sellers and the purchaser that it might be severed and removed, it would continue to be personalty, even as against purchasers with knowledge.
[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 47–56.]

4. SALES ☞124—RESCISSION—RETURN OF ARTICLE—FIXTURES—PAROL RESERVATION.
Since a parol reservation of a silo by a grantor would be ineffectual, the buyer of the silo, after grant of the land could not, on breach of warranty, make good tender of it to the seller on the rescission of contract of purchase.
[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 303–312.]

5. SALES ☞124—BREACH OF WARRANTY—RIGHT TO RESCIND—RETURN OF PROPERTY.
If a silo sold under warranty was utterly worthless, its return is not prerequisite to rescission, but if the material were of any value for any other purpose than as a silo, the sellers would be entitled to its return in event of rescission.
[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 303–312.]

6. HUSBAND AND WIFE ☞133(1)—OWNERSHIP OF PROPERTY — EVIDENCE — SUFFICIENCY.
Evidence held insufficient to support finding that the wife was not the owner in her separate right of certain notes sued on.
[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 487, 493.]

7. BILLS AND NOTES ☞497(2)—BONA FIDE HOLDERS—BURDEN OF PROOF.
In action by purchaser of silo for breach of warranty where seller counterclaimed for notes given for purchase price, and his wife set up her separate ownership of the notes, the burden of proving that she was a bona fide holder was not on the defendants.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1676, 1677, 1686, 1687.]

8. HUSBAND AND WIFE ☞36—CONTRACTS BETWEEN—VALIDITY.
Even prior to the legislation of 1913, a married woman might contract with her husband.
[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 218.]

9. HUSBAND AND WIFE ☞25(1)—HUSBAND AS AGENT OF WIFE—CONTRACTS BETWEEN.
While prior to the legislation of 1913, the husband was the sole manager of the wife's separate estate, he could not be her agent in transactions with himself.
[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 148, 150, 153.]

10. HUSBAND AND WIFE ☞25(3)—CONTRACTS OF WIFE—KNOWLEDGE OF FACTS.
Where the wife, in acquiring notes from a firm of which the husband was a member, acted of her own separate will, her husband could not be regarded as her agent, and she would not be affected by his knowledge of defects in title to the notes.
[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 151.]

11. HUSBAND AND WIFE ☞25(3)—CONTRACTS—VALIDITY.
If the husband pursuing his power to manage his wife's property assigns a note to her in the name of a firm of which he is a member and draws a check against her funds in favor of the firm without any agreement with her, she could not hold the note without being bound by her husband's knowledge of defects in the title.
[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 151.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Potter County Court; T. W. McBride, Judge.

Action by R. L. Mobley against A. M. Potter and others, wherein defendants filed a cross-complaint and Mrs. Potter filed a cross-action. Judgment for plaintiff against A. M. Potter and R. H. Potter, and all defendants appeal. Reversed and remanded.

Reeder & Dooley, of Amarillo, for appellants. C. E. Gustavus and M. J. R. Jackson, both of Amarillo, for appellee.

BOYCE, J. A. M. Potter & Son, H. R. Potter, two of the appellants, erected on the premises of the appellee Mobley a cement stave silo, for which the said Mobley paid them $400, $100 in cash and $300, evidenced by three notes, dated September 21, 1912, payable December 1, 1912, January 1, 1913, and February 1, 1913. As a part of said contract the said Potters executed and delivered to Mobley a written guaranty that said silo "is sufficient for the purpose for which it is erected, and that it will keep ensilage perfectly and will not chip, crack or crumble." This suit was brought by appellee Mobley against said A. M. Potter and H. R. Potter, alleging the breach of said guaranty; that the said silo did, soon after its erection, crack; that a great part of the ensilage placed therein by plaintiff had spoiled by reason thereof, and that said silo was worthless. Plaintiff prayed for damages for his spoiled ensilage, recovery for value of labor performed and material expended by him in the construction of the silo and for the money paid on the contract, and also for cancellation of the notes given by him. Plaintiff also alleged that Mrs. E. R. Potter, wife of A. M. Potter, was setting up some fictitious and fraudulent claim to the notes, and made her a party to the suit, and prayed for judgment also against her for the cancellation of said notes. The defendants answered by general and special denials, and Mrs. Potter, in a cross-action, prayed for judgment, for principal, interest, and attorney's fees due on said note, alleging that she was a bona fide purchaser thereof for value before maturity. The jury found in response to special issue submitted that the silo erected did not comply with the warranty made by defendant, that Mrs. Potter was not the owner in her separate right of the three notes, and that she was not a bona fide purchaser for value of said notes. They also fix the value of the labor done and material furnished by plaintiff in carrying out his part of the contract in the erection of the said silo. Upon these findings the court entered judgment for the plaintiff against A. M. Potter and H. R. Potter, for the amount of money paid and the value of labor and material expended by plaintiff and against all the defendants for the cancellation of said notes. All of the defendants have appealed from this judgment.

The errors assigned by appellants may be generally stated as follows:

First. That it was essential to a rescission of the contract, on account of the breach of warranty, that it be shown, either that there was fraud in the contract, or that the silo was worthless, and they assert that the evidence is insufficient to establish either of these essentials.

Second. That plaintiff, Mobley, had put it out of his power to rescind because he had sold the silo.

Third. That the undisputed evidence shows that Mrs. Potter purchased the notes with her separate property without notice and for value, and the findings of the jury on these issues are unsupported by the evidence. Error is also assigned as to certain charges of the court in the submission of this issue.

We will consider these questions in the order stated above.

[1] As the suit was for a breach of warranty, and the contract, as we construe it, contains no provision for a return of the property in case of breach, it was essential to plaintiff's right to rescind the contract to show either fraud in the contract or that the silo was wholly unsuitable for the purpose for which it was built. Wright v. Davenport, 44 Tex. 164; Texas-Kalamazoo v. Alley, 180 S. W. 621; Texas Machinery & Supply Co. v. Ayers Ice Cream Co., 150 S. W. 750.

[2] No issue was submitted to the jury, either as to whether the contract was induced by fraud or as to whether the silo was worthless. While the plaintiff, by trial amendment, alleged that the contract was induced by fraud, we do not think that the evidence was sufficient to authorize the submission of such issue to the jury, and we cannot assume in support of the judgment that the court so found. The court seems to have tried the case on the theory that a rescission might be had if the terms of the warranty were breached, and that it was not necessary to show that the silo was worthless. Plaintiff offered evidence to the effect that a large per cent. of the ensilage which he had placed in the silo soon after it was erected was spoiled, and the silo was cracked in numerous places, but no direct evidence was introduced by the plaintiff as to the possibility of repairing it so as to make it serve its purpose. One of the witnesses testified that he had about as soon place ensilage in the courthouse and expect to keep it, and the record contains several statements made by plaintiff to others that the silo was worthless. This testimony tends to the conclusion that the silo as it stood at the time was not suitable for the purposes for which it was erected. The testimony of some of plaintiff's witnesses, as well as the direct testimony of a number of witnesses, offered by the defendant, tends to show that the silo could be fixed up so as to be suitable for use. As we will reverse the case on another ground, we will not under-

take to decide whether the court would have been justified in finding under the evidence that the silo was wholly unsuitable for the purpose for which it was erected, nor as to whether, in view of the conflicting evidence, we should assume in support of the judgment that the court so found, when the record rather indicates that the case was tried on the theory that a finding on such issue was not necessary. The facts bearing on this issue will doubtless be more fully developed on another trial, and the issue submitted to the determination of the jury, if the case should be tried before one.

[3] The evidence shows that the silo was built on a concrete foundation, which extended three feet underground. Plaintiff Mobley conveyed the land on which the silo was built to R. F. and J. C. Jenkins, by warranty deed before the filing of the suit, and the deed contained no reservation of the silo. The testimony of one of the purchasers is to the effect that Mobley told him that the silo did not go with the land, and that he, the said Jenkins, made no claim to it. If it had been understood and agreed between the parties at the time of the erection of the silo that it might be severed and removed therefrom, then it would continue to be personalty, and if the Jenkinses bought with knowledge of this status, it would continue as to them. Clayton v. Phillipp, 159 S. W. 117; Jones v. Bull, 85 Tex. 136, 19 S. W. 1031.

[4] However, the status of the property as personalty or as a fixture would be fixed with reference to the intention of the parties at the time it was erected, and as the contract did not itself provide for any contingency upon which the silo might be removed, and this contingency could only arise by reason of the breach of the warranty and election of one of the parties to rescind, we are inclined to think that the silo became a fixture at the time it was built on the land. It appears from the authorities that the parol reservation of the silo if it were a fixture, at the time of the execution of the deed, would be ineffectual, and, notwithstanding the reservation, the said purchasers could prevent its removal, and the plaintiff, Mobley, was thus in no position to make good a tender of the silo. Brown v. Roland, 92 Tex. 54, 45 S. W. 795; State Security Bank v. Hoskins, 130 Iowa, 339, 106 N. W. 766, 8 L. R. A. (N. S.) 376; Leonard v. Clough, 133 N. Y. 292, 31 N. E. 93, 16 L. R. A. 305.

[5] However, if the silo was utterly worthless, it would not be necessary to tender a return of it before rescission might be had. Wintz v. Morrison, 17 Tex. 388, 67 Am. Dec. 658; Haynes v. Plano Mfg. Co., 36 Tex. Civ. App. 567, 82 S. W. 532. If the material, however, were of any value for any other purpose than as a silo, defendants, in the event of a rescission, would be entitled to its return.

[6] The testimony shows that these notes were indorsed by Potter & Potter, the firm composed of A. M. Potter and his son, and delivered to Mrs. E. R. Potter, wife of A. M. Potter, and that she paid therefor the sum of $300, checking on funds deposited in her name in the bank. The evidence shows that these funds represented the proceeds of the sale of a lot which had been acquired in settlement of a contingent claim which Mrs. Potter had to certain property under the will of her mother. We are of the opinion that the findings of the jury that Mrs. Potter was not the owner in her separate right of the three notes is contrary to the evidence, and if the judgment against her can be supported, it would be on the other finding that she was not a bona fide holder thereof.

[7] The only testimony as to the sale of the notes to Mrs. Potter was that given by the defendants A. M. Potter, H. R. Potter, and Mrs. Potter. Their testimony is to the effect that an agreement had been made with Mrs. Potter to sell her these notes before contract with Mobley was made; that Mrs. Potter was assured that they were good notes, and she consented to buy them; that in pursuance to this agreement A. M. Potter, on October 3, 1912, prepared check for $300, and presented it to Mrs. Potter, who signed it, and it was cashed by the firm of Potter & Potter. The notes were indorsed by Potter & Potter, and delivered to Mrs. Potter some time later, the exact time of delivery not being shown. It is shown that within a short time, probably before the notes were indorsed to Mrs. Potter, Mobley, having begun to fill the silo, noticed some cracks in it, and came to town greatly excited, creating the impression in the minds of A. M. Potter and his son that Mobley thought the silo was about to fall down. Mrs. Potter knew of their engaging in this enterprise, as it was a new venture, and was informed of Mobley's complaints as to the silo, though she testifies that this information was received after the notes were purchased by her. The court, in connection with the submission of the issue as to whether Mrs. Potter was a bona fide purchaser of the notes, charged the jury that to constitute a bona fide purchase for value it was necessary that the purchaser pay a valuable consideration therefor, and at such time have no notice of any defect, imperfection, or lack of consideration as to such notes, and that the burden of proof was upon the defendants on the issue. This charge on the burden of proof was erroneous. R. S. art. 589; Wright v. Hardie, 88 Tex. 653, 32 S. W. 885; Daniel v. Spaeth, 168 S. W. 509; Herman v. Gunter, 83 Tex. 66, 18 S. W. 428, 29 Am. St. Rep. 632; McAlpin v. Finch, 18 Tex. 831; Watson v. Flanagan, 14 Tex. 354; Bank v. Kemp, 114 S. W. 402.

[8] The court, in connection with the submission of this issue as to Mrs. Potter being a bona fide purchaser of the notes, also instructed the jury to find against her on the

issue if they should find that Mrs. Potter had knowledge of such failure of consideration, either from personal knowledge or information, or that she was acting by and through her husband, A. M. Potter, in acquiring such notes, and that her said husband, A. M. Potter, was her duly authorized agent in such transaction. It is urged by appellants that this charge was error because A. M. Potter could not act as Mrs. Potter's agent in transactions with himself. We have already stated the negotiations as testified to by the Potters concerning the sale of the notes to Mrs. Potter. Mrs. Potter testified, further, that her husband attended to her business when she wanted him to, and A. M. Potter testified that he always attended to his wife's business. It is well established that even prior to the recent legislation, enlarging her contractual rights, a married woman might contract with her husband. Sparks v. Taylor, 99 Tex. 411, 90 S. W. 489, 6 L. R. A. (N. S.) 381.

[9] While prior to the legislation of 1913 the husband was the sole manager of the wife's separate estate, he could not be her agent in transactions with himself. "In transactions between themselves, in reference to property rights, the wife must, in the nature of things, if she can contract with her husband at all so as to bind herself or her separate estate, be entitled to exercise her own will; for in reference to such matters the husband cannot be the agent of the wife to make a contract with himself." Pearce v. Jackson, 61 Tex. 646.

[10] This case, however, recognizes that if there is any contract at all, it must be one in which the wife has exercised her own will. The evidence we have referred to indicates that Mrs. Potter did, in this transaction, exercise her own will and power to contract; and, if this be true, then her husband was not to be regarded as her agent, and she would not be affected by his knowledge. Pearce v. Jackson, supra; Stephens v. Herron, 99 Tex. 63, 87 S. W. 326; Cooper v. Sawyer, 31 Tex. Civ. App. 620, 73 S. W. 992; Loewen v. Forsee, 35 S. W. 1138.

This view is not inconsistent with the case of Allen v. Garrison, 92 Tex. 546, 50 S. W. 335, relied on by appellee. In that case the husband, being the real owner of an indebtedness and having notice of a release of deed of trust securing payment of the indebtedness, as trustee under the deed of trust, sold the property and had it bid in at the sale for his wife, and conveyed it to her. It does not appear that the wife had any knowledge of or gave any assent to the transaction, it being handled by her husband; and, under these circumstances, it was held that the wife could not claim the benefit of the transaction effected for her, free from the fraudulent practices by which it was effected, although she herself may have been ignorant of the fraud.

[11] So, in this case, if A. M. Potter, in pursuance to his power to manage his wife's property, has assigned the note to her and drawn a check in favor of Potter & Potter against her funds, without any agreement with her, she could not hold the note without being bound by the knowledge of her husband. This distinction is recognized in the application of the law of agency generally. Mechem (2d Ed.) §§ 1817, 1818. See note to case of Brookhouse v. Union Publishing Co., 73 N. H. 368, 62 Atl. 219, 2 L. R. A. (N. S.) 994, 111 Am. St. Rep. 623, 6 Ann. Cas. 675; Morris v. Georgia Loan, Savings & Banking Co., 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 506; English-American Loan & T. Co. v. Hiers, 112 Ga. 823, 38 S. E. 103; Commercial Bank v. Burgwyn, 110 N. C. 267, 14 S. E. 623, 17 L. R. A. 326; Black Hills National Bank v. Kellogg, 4 S. D. 312, 56 N. W. 1071. The case of Traders' National Bank v. Smith, 22 S. W. 1056, is in harmony with the doctrine announced in these authorities, and may be better understood if read in connection with them. The reason advanced for this distinction is that if the party claiming the benefit of the transaction was acting for himself or through other independent agents, the ostensible agent, having the adverse interest, may be really treated as an adverse party, but, if there is really no contract except through the assent of the agent having the adverse interest, the principal, when he claims the benefit of such contract to which he has given no real assent, except through such agent, must take the contract subject to the contamination of the channel through which it has come. These reasons are in harmony with the reasons given by our courts for the holding generally that a principal is bound by knowledge of the agent. Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028; Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S. W. 1058.

It will not be necessary for us to express an opinion as to whether the evidence is sufficient to support the finding of the jury on the issue as to whether Mrs. Potter was a bona fide purchaser of the note, as we will reverse the case for the errors in the charge submitting the issue. The other question presented by the assignments are not likely to occur on another trial, and it is not necessary to notice them.

Reversed and remanded.