MURRAY CO. v. JACKSBORO OIL & MILLING CO. et al. (No. 8815.)

(Court of Civil Appeals of Texas. Ft. Worth. March 30, 1918. Rehearing Denied June 1, 1918.)

1. FIXTURES ☞19—MACHINERY SOLD SUBSEQUENTLY TO MORTGAGE.

Where land on which gins stood was sold, and deed of trust given, and company with notice of deed sold machinery for gins, chattel mortgage to secure price stipulating it should remain personalty, as against vendor of gins, seeking to foreclose deed of trust, machinery became part of realty, and deed could be foreclosed on it.

2. MORTGAGES ☞447 — FORECLOSURE — DESCRIPTION OF PROPERTY.

Petition by vendor of ginning plants, seeking foreclosure of deed of trust on machinery subsequently installed therein by buyers, *held* sufficiently to describe such machinery.

Appeal from District Court, Jack County; F. O. McKinsey, Judge.

Suit by the Jacksboro Oil & Milling Company against W. H. and C. A. Simmons and the Murray Company. From judgment for plaintiff, defendant company appeals. Judgment affirmed in part, and undisturbed in part.

Stark & Stark, of Jacksboro, and J. J. Eckford, of Dallas, for appellant. J. P. Simpson and J. D. McComb, both of Jacksboro, for appellees.

BUCK, J. This suit was filed February 14, 1916, by appellee Jacksboro Oil & Milling

Company against appellees W. H. and C. A. Simmons and appellant, the Murray Company, to recover the balance due upon two promissory notes in the sum of $2,750 each, executed by W. H. and C. A. Simmons, payable to plaintiff's order, dated December 16, 1910, and due December 15, 1911, and December 15, 1912, respectively, with interest at 10 per cent. and 10 per cent. attorney's fees. Plaintiff also sought a foreclosure under a deed of trust, of even date with the notes, executed by W. H. and C. A. Simmons to F. N. Foxhall,' trustee, to secure the said notes; the deed of trust being upon two tracts of land, one in the town of Jean, and the other in the town of Loving, Young county, Tex., together with the gin plants there, including engines, boilers, gin stands, etc. Appellant was made a party defendant; the petition alleging that it was claiming some sort of a lien on said lands and property, but if it had any lien thereon that the same was inferior and subordinate to the lien held by plaintiff. Appellant answered, disclaiming any interest or any lien on the property other than such machinery as was described in a certain chattel mortgage, dated July 2, 1913, and recorded in Young county on July 12, 1913. It alleged that it had sold to W. H. and C. A. Simmons on July 2, 1913, certain gin machinery, consisting of six 70-saw Murray steel huller gins complete, together with certain described attachments and accessories, and that said W. H. and C. A. Simmons, hereinafter called Simmons Bros., in payment thereof executed to the appellant their four certain promissory notes, bearing date of July 2, 1913, in the sum of $426 each, payable as follows, first, November 1, 1913, second, December 1, 1913, third, November 1, 1914, and last December 1, 1914; that on August 5, 1913, the appellant sold certain other gin machinery to Simmons Bros., who executed in payment thereof two notes of even date. in the sum of $165.75 and $165, respectively, both maturing November 15, 1913; that to secure the payment of said notes said Simmons Bros. executed to R. H. Nevitt, trustee, their certain chattel mortgage of even date,' giving a lien on said property so sold; and that in said chattel mortgage it was stipulated that the property therein described should remain as personalty wherever located until the indebtedness thereon, as provided for by said chattel mortgage, should be paid. Defendant the Murray Company further alleged that its lien under the chattel mortgage on said machinery was superior to any claim of the plaintiff set up in its petition; that plaintiff's deed of trust under which it claimed was given to secure notes existing long before the execution of the chattel mortgage by Simmons Bros. to the Murray Company, and long before the machinery therein described was installed or placed upon the premises; that plaintiff paid no value for said machinery, and was not in

the position of an innocent purchaser thereof. In a supplemental petition, plaintiff pleaded that the machinery upon which defendant the Murray Company claimed its mortgage was installed in the gins and became a permanent fixture to the real estate covered by plaintiff's mortgage long before the execution of the purported chattel mortgages under which the Murray Company claimed the. lien; that at the time said machinery was installed plaintiff's mortgage or deed of trust upon the property described therein was of record, and that the defendant the Murray Company was fully aware thereof; that the Murray Company knew at the time the machinery. it sold to Simmons Bros. was installed that there was in said gin other machinery covered by the plaintiff's mortgage, and which constituted a part of the realty, and said defendant knew that in order for its machinery to be installed the machinery covered by plaintiff's mortgage would have to be removed, which was done by Simmons Bros. with the knowledge and consent of the Murray Company, and without the consent or knowledge of plaintiff. Wherefore plaintiff pleaded as in its original petition. A trial was had before the court, without the aid of a jury, and judgment was rendered against the Simmons Bros., severally, on the notes given to plaintiff, in the sum of $5,835.87, with interest and attorney's fees, with a foreclosure under the deed of trust; said foreclosure being made superior to the right of foreclosure on the part of the defendant the Murray Company. Judgment was given in favor of defendant the Murray Company on its cross-action, against Simmons Bros., severally, for its debt, and for foreclosure on the machinery described in its chattel mortgage, subject, however, to the judgment rendered in favor of the plaintiff. From this judgment the defendant the Murray Company has appealed.

The evidence discloses that in December, 1910, Simmons Bros., who were conducting gins at Loving and Jean, owed the Murray Company $5,500 for gin machinery purchased from the Murray Company and which had been installed in the gins; that the Murray Company was pressing them for payment and they applied, through F. N. Foxhall, president of the Jacksboro Oil & Milling Company, to the latter for a loan to take up this paper and liquidate the debt; that the Jacksboro Oil & Milling Company extended Simmons Bros. the loan requested and gave them a check for $5,500 with which to pay the Murray Company, and the latter executed a release; that thereupon Simmons Bros. executed a mortgage on the gin plant to secure this debt, and executed two notes in the sum of $2,750 each; that on these notes payments were made in the sum of $500 each, and interest paid thereon to December 12, 1912; that on December 10, 1915, Sim-

mons Bros. executed their renewal note in the sum of $5,835.87 to the Jacksboro Company, said notes reciting that it was a renewal extended on the balance due on the two promissory notes before described, and that it was the intention of the parties that the deed of trust theretofore given should remain in full force and effect to secure this last-described note. Said deed of trust covered the gin plants located at Loving and Jean, including engines, boilers, gin stands, suctions, and all machinery, tools, appurtenances, house, and all things of whatsoever kind connected with each and both of said gins, as well as the leases of Simmons Bros. on the lands described on which said things were located. The deed of trust dated December 16, 1910, was duly executed by both of the Simmons brothers, on December 16, 1910, and filed for record in Young county on January 30, 1911. The evidence further shows that appellant company had actual as well as constructive knowledge of the existence of this mortgage held by the Jacksboro Company at the time it sold the machinery to Simmons Bros., which was later installed in the gin plant at Loving, and that it knew that in order to install the new machinery sold by it to Simmons Bros. the old machinery on which plaintiff held the mortgage would have to be removed, and that it was taken out and stored in an outhouse; that the Jacksboro Company did not know of the proposed removal of the machinery on which it held a mortgage until after it had been removed and the machinery purchased from appellant had been installed. The evidence further shows that the removal of the old machinery depreciated its value as a protection to the Jacksboro Company for its debt to the extent of some 75 per cent. of its value while in use in the gin plant; that there were eight gin stands, two boilers, two engines, etc., used in the gin at Loving prior to the installation of the new machinery; that in order to install the machinery purchased from appellant it was necessary to make some changes in the building, to cut through the west end, etc., and that the new gin stands were fastened by means of bolts to the floor or sills; that all gin stands are fastened in this way: The stands are put in first, then the feeders; the distributors resting on top of the feeders. The feeders are bolted, in order to steady them, and the distributors are fastened with little straps of iron to the feeders, holding them together; but the distributors are connected with a timber running across the building, making the machinery all fastened together and fastened to the building. The engines rest on concrete bases and the boilers "are swung on timbers." Simmons testified:

"All this machinery is connected up with the building, shafting, etc., the whole thing, while it is in operation. When we placed these six gin stands (bought from appellant) in there and in-

stalled them there, I intended them as a permanent part of our gin plant. I would not have put them in there with any other intention, only to make it a permanent part of the plant. To remove these gin stands, compressors, condensers, etc., from this plant, would render the plant practically worthless as a gin. It could not be operated as a gin without this machinery, or some other in the place of it."

The evidence further shows that the mortgage to the appellant company was given some days after the machinery reached Loving, and while it was still on the car; that the three notes for $426 each, given by Simmons Bros. to appellant, were dated July 2, 1913; that the other two notes heretofore mentioned were dated August 5, 1913. There were two chattel mortgages given, one dated July 12, 1913, and executed July 5, 1913, and recorded July 12th, thereafter. This first mortgage covered all the property upon which a lien was claimed, except six 70-saw Murray steel ratchet feeders complete, which was covered by the second mortgage, dated August 5, 1913, and acknowledged by Simmons Bros. August 21st, and filed for record in Young county August 27, 1913. At the time of the execution of the deed of trust to the Jacksboro Company in 1910, Simmons Bros. did not have a deed to the land on which the gin was located, but they had an understanding or agreement with certain parties at Loving that a deed was to be given, which was later executed and delivered. Said deed provides: "That whenever said tract of land or any part thereof shall cease to be used as and for the actual operation as a gin plant, the title therein and thereof claimed and vested in the vendee shall revert to the vendor."

[1] Without attempting to take up and discuss each of appellant's 17 assignments separately, we will consider and discuss the different questions thereby raised. The contention of appellant is that by reason of the stipulation contained in the chattel mortgages given by the Simmons Bros. to appellant, to the effect that the machinery covered thereby should remain and retain its character as personalty, no matter how or where used, said machinery, though subsequently affixed to the building and gin plant, so that in the absence of the stipulation it would have become a fixture, yet because of the stipulation it did not lose its character as personalty; that therefore such machinery did not become subject to the deed of trust lien held by the Jacksboro Company. As said by this court in Phillips v. Newsome, 179 S. W. 1123:

"While as between the parties to the mortgage it is undoubtedly true that the character of the property may be fixed by a contract, that is, the purchaser may estop himself from claiming the property as a part of the realty by reason of a subsequent attachment thereof to the soil, yet appellee was not a party to the mortgage contract under consideration. He was not affected by the provision that the engine should not become a part of the realty, and was without knowledge of it."

In the cited case the controversy was between one who had sold certain gin machinery to a gin company and had retained a lien thereon under a chattel mortgage containing a stipulation in verbiage and effect similar to the one in the instant case, and had said mortgage seasonably and duly recorded in the chattel mortgage records of the county where the gin was located, and a subsequent purchaser of the realty and gin property, who paid a valuable consideration therefor and received a warranty deed, and who at the time of the purchase was without any actual notice of the claim of the holder of the chattel mortgage. In this case we held that the purchaser under the deed received a title to the property, including the machinery upon which a chattel mortgage lien had been retained, not affected by such lien. This holding was based upon the conclusion reached that the purchaser of realty is bound only to take notice of the record title of the realty, and is not bound to examine the records for chattel mortgages, for he is not affected by the record of the chattel mortgages upon fixtures on such realty. Ice, Light & Water Co. v. Lone Star, etc., Works, 15 Tex. Civ. App. 694, 41 S. W. 835. We are of the opinion that the evidence fully sustains the conclusion that so far as purchasers for value and other parties not to be affected by the terms of the chattel mortgage given by Simmons Bros. are concerned the machinery purchased from appellant upon installation in the gin plant become fixtures, a part of the realty. Brown v. Roland, 92 Tex. 54, 45 S. W. 795, reversing the holding of the Court of Civil Appeals in 33 S. W. 273; Jones v. Bull, 85 Tex. 136, 19 S. W. 1031. We think such evidence sustains the conclusion that the appellant not only had both actual and constructive notice of the existence of the deed of trust lien held by the Jacksboro Company, but also knew that it would be necessary to remove a part of the machinery covered by the lien under said deed of trust in order to install the machinery purchased from it, and that such removal would greatly depreciate the Jacksboro Company's security. The question then is, Would the Jacksboro Company be affected by the stipulation in the chattel mortgage contained to the effect that the Murray Company machinery should retain its character as personalty, and would such stipulation, so far as the Jacksboro Company is concerned, determine the character of such machinery which had become annexed to the realty? We think not. Sinker et al. v. Comparet et al., 62 Tex. 470–476; State Bank v. Martin (Mo. App.) 182 S. W. 1022. In Jones on Chattel Mortgages (5th Ed.) § 129:

."It is not competent for an owner of real estate to bind existing mortgagee by any arrangement to treat as personalty annexations to the freehold. The legal character of such annexations is determined by the law to the real estate, and mortgagees, as well as other parties in interest, are entitled to the benefit of this rule of law, which can be taken from them only when waived."

See Burnside v. Twitchell, 43 N. H. 390; Smith v. Waggoner, 50 Wis. 155, 6 N. W. 568; Voorhees v. McGinnis, 48 N. Y. 278; Hunt v. Bay State Ins. Co., 97 Mass. 279, as supporting the text.

In the Massachusetts case of Richardson v. Copeland, 6 Gray (Mass.) 536, 66 Am. Dec. 424, it is held that fixtures in a manufacturing establishment become part of the realty, and the title to which passes to a subsequent purchaser even with notice of a stipulation in the chattel mortgage providing that the machinery, which because of their use has become fixtures, should retain its character as personalty. But we do not think this holding is in harmony with the Texas decisions or in line with the trend of authority. In the Colorado case of Fisk v. People's Nat. Bank, 14 Colo. App. 21, 59 Pac. 63, the holder of a trust deed lien was held to be entitled to maintain an action against the holder of a chattel mortgage lien covering machinery subsequently affixed to the soil for removing said machinery thereby and impairing the security under the trust deed. If no waiver on the part of the holder of the trust deed lien be shown, we are prepared to concur in this holding. In Tibbetts v. Horne, 65 N. H. 242, 23 Atl. 145, 15 L. R. A. 56, 23 Am. St. Rep. 31, it is held that one who takes a chattel mortgage lien on machinery which, with his consent, is affixed to and made a part of the realty, but takes no mortgage on the realty, cannot enforce his lien against even a subsequent mortgagee of the realty without notice. In Campbell v. Hoddy, 44 N. J. Eq. 244, 14 Atl. 279, 6 Am. St. Rep. 889, in a case where a mortgage on the realty had been given and subsequently the mortgagor had purchased machinery upon which he gave a chattel mortgage and affixed it to the realty, it was held that the equitable way of dealing with the property was to protect the prior mortgage to the extent of his security prior to the installation of the machinery. In other words, that the enforcement of the chattel mortgage lien should not be permitted to the extent of impairing the realty mortgagee's security, as it would have been had the premises been permitted to remain as they were and had the machinery not been installed. In construing this statute, our own Supreme Court held in Bowen v. Wagon Works, 91 Tex. 385, 43 S. W. 872, that the word "purchasers" therein used embraced all holders of claims secured by trust deed or mortgage. It has also been repeatedly held that an extension of time on an existing debt, in consideration of the giving by the debtor of a mortgage, constitutes the creditor a mortgagee in good faith. Barnes v. Gray & Co., 14 Tex. Civ. App. 439, 37 S. W. 162.

We conclude from a rather exhaustive examination of the authorities, both in this and other jurisdictions, that the Jacksboro Oil &

Milling Company showed its right to have the appellant's chattel mortgage lien postponed and made subject to the satisfaction of the former's lien. The evidence fails to show that the value of the former's lien was enhanced by the removal of the old machinery and the installation of the new, or, if so, to what extent, and even if we should be inclined to follow the rule laid down in the New Jersey case of Campbell v. Roddy, supra, the appellant has not affirmatively shown itself entitled to relief, or the nature and extent of any relief to which it may be entitled. The evidence does show that the removal of the old machinery greatly impaired the appellee's security, and that such removal and the subsequent installation of the machinery bought from appellant was made without notice to or the knowledge of the Jacksboro Company. While appellee makes some point of the fact that some ten days elapsed between the execution of the first chattel mortgage and the recording thereof and four days elapsed in the case of the second mortgage, and that hence appellant did not file its mortgages for record "forthwith," as required by the statute, we do not rest our conclusions as to the superiority of plaintiff's lien upon this contention, but upon the fact that appellee was entitled to the full protection of its security under the deed of trust, unimpaired by the changes made in the machinery in the gin, the essential character of which change was known to appellant prior to and at the time it took its chattel mortgages. Hence we overrule appellant's assignments 1 to 9 inclusive.

[2] Another group of assignments attack the judgment on the ground that the plaintiff's petition did not sufficiently describe the machinery upon which plaintiff sought a foreclosure. It described the property as follows:

"Situated in Young county, Tex., and being gin plants owned by the said W. H. Simmons and C. A. Simmons, located at Loving and Jean, and including engines, boilers, gin stands, suctions, and all machinery, tools, appurtenances, houses, and all other things of whatsoever nature or character connected with each and both of said gins," etc.

It further referred to the deeds of trust by their dates, volumes, and pages of trust deed records, etc. We overrule these assignments, and also those assignments which question the sufficiency of the evidence as to the property upon which a foreclosure was sought. We think both allegations and evidence are ample to sustain the judgment.

All assignments are overruled, and the judgment will be affirmed as to appellant, and left undisturbed as to the judgment against W. H. and C. A. Simmons, who have not appealed.

Judgment affirmed in part, and undisturbed in part.

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes