**R. T. HERRIN, Appellant,**

v.

**Lester BUNGE, Appellee.**

No. 13185.

Court of Civil Appeals of Texas.

Houston.

May 26, 1960.

On Filing of Remittitur June 2, 1960.

Phinney & Hallman, Carl L. Phinney, Leroy Hallman, Ralph W. Pulley, Jr., Dallas, for appellant.

Hodges, Moore & Gates, Hollis Massey, Columbus, for appellee.

BELL, Chief Justice.

The appellee recovered judgment against appellant in the amount of $793.88. This amount represented certain alleged fixtures taken by appellant from real property which he sold to appellee, and also damage caused by appellant's agents to two gates. Trial was to the court without a jury.

On March 14, 1956, appellant and appellee entered into a written contract, under the terms of which appellant agreed to sell to appellee and appellee agreed to purchase from appellant for a consideration of $112,500, 1,250 acres of land in Colorado County. The part of the contract material to this appeal is the provision that "large barn to be moved by Seller as his own separate property and not part of this consideration." Also the seller was to, 90 days from the date of the contract, deliver possession of the land to appellee.

The sale of the property was consummated April 10, 1956, by the payment of the consideration and the delivery of a deed. Contemporaneously with consummation appellant gave appellee a letter which reserved to appellant 60 acres of corn he had planted and certain feeders on skids. It also stated 3 bobtail vans on the property should belong to appellee.

The evidence shows that appellant removed 3 concrete watering troughs and their fittings, 1 steel water tank, 277 feet of 2-inch water pipe, and 67½ feet of 2-inch pipe used as sign posts. Damage was shown to have been done to 1 aluminum gate, 1 steel gate, and 12 1" X 6" X 12' boards.

The trial court, in his findings of fact, found the following improvements had been placed on the land by appellant prior to the date of the contract of sale:

1. 277 feet of 2" pipe used as a water line for watering livestock.

2. 3 concrete water troughs with fittings for watering livestock.

3. 1 steel butane tank of 1,000 gallon capacity on three columns constructed as a foundation for such tank, for use in watering livestock.

4. 12 boards of lumber, size 1 X 6 and 12 feet long, constructed in a fence for keeping livestock.

5. 1 steel gate made of pipe, 11 feet long and 3½ feet high, used in livestock fence.

6. 1 aluminum gate used in fence for keeping livestock.

7. 4 sign posts made of 2" steel pipe with cross-arms and set in concrete.

The court found these improvements were actually and constructively annexed to the land by appellant and that he intended that they be used and they were used as a part of the permanent improvements on the land.

There was the further finding that these were being used as a part of the perma-

nent improvements when the deed was delivered and they were not reserved by appellant or excepted from the conveyance.

The court then concluded the improvements were a part of the land conveyed to appellee by the deed from appellant and that appellee was entitled to recover the reasonable cost of replacing the fixtures moved and the reasonable cost of repairing those damaged, so as to place the premises in the same condition they were in at the time of the delivery of the deed.

There were other items sued for by appellee, but the court found adversely to him and no complaint is here made by appellee of that part of the judgment.

Appellant presents four Points of Error:

1. He contends the court erred in finding and concluding that the 277 feet of 2″ pipe and the 3 concrete watering troughs were not reserved and excepted by appellant. His position is that they were a part of the barn which was reserved in the contract of sale.

2. He contends the court erred in finding and concluding the steel butane tank passed with the land because he asserts it was not actually or constructively annexed to the land and was not used as a part of the permanent improvements.

3. He contends the court erred in holding him liable for damage done to the gates, sign posts and boards because the damage occurred prior to the contract of sale or, alternatively, it occurred while he was in lawful possession of the premises and there was no allegation of negligence.

4. He contends there is no evidence to support the finding that the reasonable cost of replacing the steel tank was $400, or that the finding is contrary to the overwhelming weight and preponderance of the evidence.

Appellant contends that none of the above findings are supported by the evidence and alternatively that each finding is contrary to the overwhelming weight and preponderance of the evidence.

■ The first contention of appellant is that the 277 feet of 2″ water pipe and the 3 concrete water tanks were a part of the barn which was reserved in the contract of sale. The action of the trial court in holding adversely to appellant on this issue was correct.

The evidence shows that the 2-inch line ran from a point near the water tank to a point near the barn. From the 2-inch line 1″ lines led up to each water tank. None of the 3 troughs here involved was connected physically with the barn. The nearest one was about 30 feet from the barn. The barn was called a "show barn". It was used to show cattle. Inside of the structure were stalls for the cattle. There was a feed room and a wash room. There was also a water trough in the barn but it is not here in dispute. The cattle were usually kept in the barn during the day, though they were sometimes in the pasture. At night they were turned into the exercise pens that were adjacent to the barn. The exercise pens, under some testimony, were also used in connection with the breeding of cattle. In the exercise pens were the three troughs involved. The troughs rested on the ground, but soil had been banked up around the bottom part of each, so that you might accurately state that the lower portion was below the surface of the ground. A creosoted fence pole was at the end of each, about the middle of each end, and across the center line of each, two 1″ X 6″ boards were placed and nailed to the pole. The trough would in this manner afford drinking facilities in two separate exercise pens. One of the troughs was in the fence line as just described, but it served only one exercise pen and the pasture. Thus the troughs could only be moved by removing the boards and by being lifted out of the shallow embanked earth around each. The 2″ pipe was all buried 4 or 5 inches. It was placed there when the show barn was built, as were the exercise pens. The only physical connection that could be said to exist between the barn structure and the

two-inch pipe is that a one-inch pipe connected to it served a water trough in the barn. The only physical connection, if it is that, which could be said to be between the barn structure and the three troughs here involved is that they were incorporated in the exercise pen fences, as above described, and an end of such fences was nailed onto the end of the barn.

Appellant takes the position that, because of the above, and because the barn structure, the troughs, the 2-inch pipe and the exercise pens were all erected or placed on the premises at the same time for use in showing cattle, they all constitute the barn.

Unquestionably all of these items were a part of the realty that would pass with the sale of the land to which they were affixed in the absence of a reservation in favor of the seller. The question is what the parties intended when there was an agreed reservation to the seller of the barn. We think that when reference is made to a "barn" it would undoubtedly be understood to mean the structure where there are stalls for stock, where they are fed and protected from the weather, wash rooms for washing and currying the stock, and where feed is stored. One on a farm does not think of the "lot" on the farm as being any part of the barn. The exercising pens on the ranch are comparable to the "lot" on the farm. And neither does one think of the watering trough in the lot as being part of the barn. Certainly the waterpipe that carries water to the trough that is not physically connected with the barn is not thought of as a part of the barn. A "barn" is defined by Webster's Collegiate Dictionary as "a covered building for storing grain, hay, etc.; and also, in the United States, for stables, etc. A building used for housing horses, vehicles, etc."

The fact that these structures were built to use in connection with the barn does not make them a part of the barn. They could be used for other purposes wholly in the absence of a barn. Under some testimony, the exercise pens were also used in connection with breeding cattle. They were obviously susceptible for use in gathering cattle where they could be treated for disease, dehorned, branded or altered. The troughs were an integral part of the pens. One of the troughs served both the pasture and an exercise pen.

It is also of significance that appellant did not remove the fences which made up the exercise pens. Too, there were some feeders on skids in the exercise pens which appellant took care to reserve to himself even though they were not attached to the realty.

The trial court correctly concluded these items were not a part of the barn and the intention of the parties was not that they were to be removed by appellant.

■ Appellant next contends the trial court erred in holding the 1,000 gallon tank passed under his deed to appellee because, he contends, it was neither actually or constructively attached to the land.

The tank was a butane tank intended for use as a water tank. It was brought to the property by appellant with the intention that it would be erected on the property as a permanent fixture for use on the property. It was at the time of the sale and conveyance resting on concrete columns that had been built for the purpose of holding the tank. Pictures in the record show three columns with a half circle recess on the upper side of each into which the cylindrical shaped tank could be and was placed. The weight of the tank is not shown, but evidence does show the steel tank to be quite heavy. It was held in place on the forms by its weight and the recesses into which it fit. It was not otherwise connected with the columns. The columns were set in the ground. Three hundred yards (evidently they mean 300 feet) of concrete were poured in making the columns. The forms for the columns were made in Houston and brought to the property where

the columns were made. They were built for the purpose of holding the butane tank in question. The tank was not connected to any water system because the well near where it was placed was dry. Appellant's foreman testified he made a mistake and placed the tank by this well. He misunderstood Mr. Herrin. It should have been placed at the house where Mr. Houston lived as there was electricity and a pressure pump available there. The tank thus had never actually been used though it could be connected into the watering system. The columns were useless except for holding the tank. It was unnecessary, in the light of the use intended, to bolt the tank because the nature of the columns built for it and its weight would hold it in place. There was testimony that the tank was for awhile on the ground and was placed on columns to protect the tank. This but presents a conflict in testimony that the trial court resolved against appellant.

■ The test employed as between vendor and vendee to determine whether an article is a fixture or removable chattel seems to involve three elements:

1. Has there been a real or constructive annexation of the article in question to the realty?

2. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

3. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold—this intention being inferable from the nature of the article, the mode of annexation and the purpose or use for which annexation was made. See Jones v. Bull, 85 Tex. 136, 19 S.W. 1031.

Of these three elements pre-eminence is given to the question of intention to make the article a permanent accession to the freehold, while the other elements or tests are primarily of value as evidence of intention.

■ The trial court had before. him evidence that the tank was bought for and brought to the land for use by appellant as a water tank. He had 300 yards (evidently 300 feet) of concrete poured into the forms to hold the tank. Appellant's foreman testified he misunderstood appellant and put the tank at the wrong place. Another tank was installed and was in use. The well where the tank in question was placed was dry. Instead of using this tank at the house, appellant chose to leave it at the well. The court could judicially notice, as do we, that the period involved was one of drought and that many wells and springs go dry, yet when rains return many wells and springs again are of value. The court could have reasoned that this is what appellant hoped for.

The tank was sufficiently attached to the land, considering its nature and the use to which it was to be put. No additional act was necessary to hold it in place even when in use. The nature of the concrete columns and the weight of the tank were all that were required to hold it in place for the purpose to which the tank was adapted and for which it was purchased and taken to the ranch.

These factors together with the admission of appellant of his intention to make it a permanent part of the ranch are sufficient to support the court's finding that it was a fixture that passed to appellee under the deed.

■ Appellant contends the court erred in allowing recovery for damage to the 1 X 6 boards, the two gates and the sign posts because there was no evidence, or allegation, of negligence and appellant was rightfully in possession of the property and would be liable only for negligence.

The evidence shows part of the pipe making up the sign posts was removed by appellant's agents and the part left was damaged by his agents.

With regard to the 1 X 6 boards, the evidence shows they were damaged when

appellant's agents wilfully used a winch to remove the troughs.

With regard to the gates, the evidence was conflicting as to whether the damage occurred before or after the contract of sale. There is evidence showing it was caused by acts of appellant's agents. One gate was damaged when a truck was backed into it and another when the agent opened it and allowed it to swing back. We note that appellee pled that the damage was caused by the wrongful acts of appellant. Appellant did not except to the petition. The allegation is sufficient, in the absence of exception, to support a finding of negligence. Some of the acts were also shown to be wilful, such as damage to some pipe in the sign posts and the 1 X 6 boards. There is evidence otherwise showing negligence.

We also find that the evidence is sufficient to support all findings made by the trial court that we have thus far discussed in the opinion.

■ Finally, appellant contends there was no evidence to support the trial court's finding that the butane tank was of the value of $400. We have reached the conclusion that appellant is correct in this contention.

The burden of proof on this issue was on appellee. The tank in question, while always referred to as a butane tank, was shown to be a used tank and that it was installed for use as a water tank. Mr. Herrin testified it was a good tank but this was in answer to the question "But they were good tanks and they would have to hold water?" Mr. Pitt, an employee, who had seen the tank, said it was apparently in good shape and he thought as good as the one at the house but he couldn't say without putting a test on it.

The other witnesses who testified had never seen the tank. They testified in substance that a new butane tank cost from $500 to $525 and a used butane tank would sell for about 20% less. One witness said for a used butane tank that would hold butane he would pay $400. There was testimony that a butane tank that had been used for water could not be used for butane. One witness testified he tried to sell the tank in question and was offered only the scrap price of $75 to $100. One witness testified the tank cut in two and used as a water tank would be worth $75 to $100.

We are of the view that the evidence will not support a value of $400 because the only effect of the testimony is that this would be the value of a butane tank that would hold butane. The evidence will not support a finding that this tank would hold butane.

■ We think the effect of finding the value at $400 makes the judgment excessive, but we also think this can be cured by remittitur. The highest value that was placed on the tank as a water tank was $100. The finding is therefore of an amount excessive by $300. A remittitur of $300 will cure the error. Central Power & Light v. Graddy, Tex.Civ.App., 318 S.W.2d 943, no writ hist.

■ Appellee says that he will be willing to have the tank returned in lieu of damages if it is in as good condition as when taken. Appellee made his election in the trial court when he obtained a judgment for damages.

The judgment of the trial court will be reformed and affirmed if within 15 days appellee files a remittitur of $300. If the remittitur is not filed, the case will be reversed and remanded on the issue of the value of the steel tank. Subject to the remittitur the judgment of the trial court will be reformed so as to award judgment to appellee in the amount of $493.88.

On Filing of Remittitur

On May 26, 1960, we rendered an opinion stating this cause would be reversed and remanded on the issue of the value of a tank appropriated by appellant unless

within 15 days appellee filed a remittitur of $300, but if such remittitur was filed the judgment of the trial court would be reformed and as reformed would be affirmed. On June 1, 1960, appellee filed the remittitur directed.

The judgment of the trial court is, therefore, reformed so that appellee shall have and recover of appellant the sum of $493.88 with interest from April 25, 1957.

Costs are adjudged three-eighths against appellee and five-eighths against appellant.