

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 6, 1972

The Honorable James U. Cross        Opinion No. M-1147
Executive Director
Texas Parks and Wildlife        Re: Ownership and recover of
 Department                          abandoned shell used as
John H. Reagan Building              pads for foundations for
Austin, Texas    78701               offshore drilling opera-
                                     tions and other relative
Dear Mr. Cross:                      questions.

        You have recently requested the opinion of this office
regarding the ownership of shell used as foundations for oil and
gas drilling operations in the bays of this State when the drill
sites are abandoned.  Your request reads, in part, as follows:

        "An inquiry has arisen concerning recovery of
        abandoned shell from pads used as foundations for
        offshore drilling operations.  This department needs
        your opinion relative to the principles of law in-
        volved.

        "Lessees of submerged land tracts, in the
        course of operations or development of oil and/or
        gas resources, require a firm and relatively level
        site upon which to place a drilling rig.  In
        coastal operations when bay bottoms require place-
        ment of some material to achieve the optimum con-
        ditions, shell is customarily laid down in a pad
        as a foundation for a drilling rig.

        "Normally, the shell involved will have been
        produced and purchased from the State at some other
        location.  At the end of the drilling operation,
        whether or not a well is completed, the shell pad
        is usually left in place.  Evidently, most lessees
        do not feel that it is worth reclaiming.  In the
        case of a completion, a structure is left to pro-
        tect the well head and the shell is available in
        the event the well needs to be reworked.  If no
        production is made, the well is plugged and no
        structure remains.

        "I am informed by personnel of the General
        Land Office that leases are on occasion forfeited

or abandoned by failure to pay the following
year's rental, in the event a completion is
not made.

"We have been approached by an individual
who now proposes to negotiate agreements with
various lessees who may have abandoned such shell
pads for the purpose of reclaiming that shell. In
some instances, due to the nature of the bottom
and the weight of the drilling rig, the shell
may have been covered over by bottom sediments
or have been pressed into the bottom. There
will probably be occasions when such shell will
have been placed directly on shell which had not
been previously removed and sold.

"In light of the above, our questions then are:

"1. Under the facts presented above, does
ownership of the shell placed upon bay bottoms
revert to the State?

"2. If your answer to question number one
is affirmative, at what point would the ownership
to the shell revert to the State?

"3. If ownership does revert to the State,
would such shell be restored to the jurisdiction
of the Parks and Wildlife Department?

"4. In the event you determine that the
Parks and Wildlife Department would regain juris-
diction to the shell, would a permit for removal
be required, and, if a permit is required, can
the department sell the shell?

"5. If you determine that ownership does not
revert to the State, would the party need a permit
from this Department to disturb the bay bottoms in
accordance with Opinion No. M-84 and other opinions
issued by your Office?"

The shell used to make a pad for the drilling barge with its
attached derrick and rig to rest upon is unquestionably personal
property before it is spread upon the bay floor at the proposed
well site, since it has previously been dredged up, severed from the
bay floor and paid for. The basic question is, does the shell be-
come a fixture when redeposited on the bay floor as a pad?

It is said in 25 Texas Jurisprudence, 2d, page 394, Fixtures, §3, that:

> ". . .'Whatever is affixed to the soil belongs to the soil.'  Thus, in the absence of a reservation, buildings and other articles affixed to or used in connection with realty in such a way as to constitute appurtenances or fixtures pass as a matter of course by the conveyance, devise, or decree passing title to the realty."

It is also stated in 25 Texas Jurisprudence, 2d, page 398, Fixtures, §6:

> ". . .Property held in place by the force of gravity without any fastening is a fixture, provided an intention to make the thing a part of the freehold appears and its weight is sufficient, because gravity will keep it in place."

It is also observed in 25 Texas Jurisprudence, 2d, page 398, Fixtures, §7, that:

> "An important factor to be considered in determining the status of property affixed to realty is its removability.  Chattels lose their identity as personal property where they are so annexed to the realty that they cannot be detached without damage to the freehold, or without destroying the usefulness of the property to which they are annexed. . ."

In the case of Jones v. Bull, 85 Tex. 136, 19 S.W. 1031 (1892), the question was considered as to whether property that had formerly been personalty become a fixture, and the Court held that where evidence does not admit to any other conclusion but that property in controversy is a part of the realty, a jury may be so instructed, observing:

> ". . .In the case of Hutchins v. Masterson, 46 Tex. 554, it was said that 'the weight of modern authorities establish the doctrine that the true criterion for determining whether a chattel has become an immovable fixture consists in the united application of the following tests: (1) Has there been a real or constructive annexation of the article in question to the realty? (2)  Was there a fitness or adaptation of such article to the uses or purposes of the realty with

which it is connected?   (3)   Whether or not it
was the intention of the party making the annex-
ation that the chattel should become a permanent
accession to the freehold, this intention being
inferable from the nature of the article, the
relation and the situation of the parties inter-
ested, the policy of the law in respect thereto,
the mode of annexation, and purpose or use for
which the annexation is made.   And of these three
tests preeminence is to be given to the question
of intention to make the article a permanent
accession to the freehold, while the others are
chiefly of value as evidence of this intention.'
See Moody v. Aiken, 50 Tex. 74; Willis v. Morris,
66 Tex. 628, 1 S.W. Rep. 799.   The question of
intention relates to the time when the land was
purchased and the machinery was originally placed
upon and attached to it, and, when so considered,
we think every test suggested by the above rules
for the purpose of making such machinery a part
of the freehold was fulfilled.  The evidence does
not admit of any other conclusion than that the
property in controversy was a part of the realty.
As that was the controlling issue in the cause,
and there was no evidence proper to be considered
to the contrary, the court should have charged
the jury to find for the plaintiff."  (19 S.W.
1032)

In the situations about which you inquire, the shell is
spread upon the bay floor so as to form a level platform for the
drilling barge, derrick, and rig to rest upon.  The weight of the
shell, together with the weight of the drilling barge, rig, and
derrick, compresses, grinds, and further works the shell farther
into the submerged soil.

At this point it would be impossible to remove the exact
shell that had been placed on the bay floor from the other shell,
silt, marl, and other material comprising the bay floor without
materially altering and destroying the bay floor insofar as it
existed immediately before or after the shell had been placed
thereon as a pad for drilling barge and well site.  The intent
of the parties involved is presumed to have been to make this
shell a part of the realty.

We believe that under these circumstances and under the
above cited authorities, particularly Jones v. Bull, supra, the
shell used for pads for drilling in the Texas bays for oil and gas

becomes a fixture and attached to and a part of the realty as a matter of law when the shell and the drilling equipment are in place. Any further removal to a new location would be subject to the jurisdiction of the Parks and Wildlife Department, and such party desiring to remove the shell must obtain a permit from the Parks and Wildlife Department. Article 4053, Vernon's Civil Statutes, so requires. Attorney General Opinions Nos. WW-151 (1957) and M-84 (1967). It is our conclusion that the Parks and Wildlife Department may sell the shell as provided for by Article 4053, et seq, upon abandonment or termination of the lease.

### SUMMARY

Shell redeposited on bay floors as pads for drilling barges, rigs and derricks in the Texas bays for oil and gas exploration and production becomes a fixture and attaches to and becomes a part of the realty as a matter of law when the shell and the drilling equipment are in place. Any further removal to a new location would be subject to the jurisdiction of the Parks and Wildlife Department, and such party desiring to so remove the shell must first obtain a permit from the Parks and Wildlife Department to do so in accordance with Article 4053, Vernon's Civil Statutes.

The Parks and Wildlife Department may sell this shell to any party desiring it, as provided for by Article 4053, et seq, Vernon's Civil Statutes, upon abandonment or termination of the lease.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by J. Milton Richardson
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
James H. Quick
Roland Allen
Harriet Burke
Bill Campbell

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant